**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Michael Ladell SARDIN,**
**Defendant–Appellant.**

No. 89–6189.

United States Court of Appeals,
Tenth Circuit.

Dec. 18, 1990.

Timothy D. Leonard, U.S. Atty., and James F. Robinson, Asst. U.S. Atty., Oklahoma City, Okl., on the briefs, for plaintiff-appellee.

William P. Earley, Asst. Federal Public Defender, Oklahoma City, Okl., on the brief, for defendant-appellant.

Before McKAY, SEYMOUR and BRORBY, Circuit Judges.

SEYMOUR, Circuit Judge.

Defendant Michael Sardin appeals his sentence, contending that information was used in sentencing him in violation of his Fifth Amendment rights and that the guideline range was erroneously computed. We affirm in part and reverse in part, and we remand for resentencing.

I.

Michael Sardin and four co-defendants, Oscar St. Julian, Kelvin Davis, Kevin Harris, and Marcus Denton all were involved in a plan to ship cocaine from California to Oklahoma City from November 1988 to early 1989. Approximately four shipments of cocaine were made to Oklahoma for sale in furtherance of this plan. The district court found that at least thirty-six ounces of cocaine had been imported into Oklahoma from California over this period of time.

Prosecution for these shipments resulted in multiple count indictments against the defendants. Sardin, St. Julian, and Davis [1]

---

1. Charges against Harris were dismissed. Den-  ton entered a guilty plea to possession of co-

ultimately entered into agreements to plead guilty to maintaining a crack house in violation of 21 U.S.C. § 856 (1988) in return for dismissal of the other counts against them. Each defendant also agreed to cooperate with the Government, and the Government agreed not to use against him any information he disclosed.

## II.

■ Sardin objected at his sentencing to use of information disclosed by his co-defendants as a basis for an upward departure when it was the same information he had disclosed. We recently addressed the identical issue in Davis' appeal, *United States v. Davis*, 912 F.2d 1210 (10th Cir. 1990), where we approved the use of evidence obtained from Davis' co-defendant even though Davis had disclosed identical information under his cooperation agreement. *See id.*, at 1213–1214.

■ Sardin also contends the court impermissibly considered the amount of drugs as a basis for an upward departure when sentencing for the crime of operating a crackhouse. We settled this issue as well in *Davis*, holding that the quantity of drugs is a valid factor to consider in determining whether an upward departure from the sentence for a premises violation is appropriate. *Id.* at 1213.

## III.

■ In *Davis*, we retained jurisdiction and remanded the case to the district court to explain its reasons for the degree of departure from the guideline range. *See id.* at 1215. The district court has similarly failed to explain the degree of departure in sentencing Sardin. The error here is even more significant, however.

Sardin, like Davis and St. Julian, was convicted and sentenced for maintaining a crack house. The court made an upward departure from each conspirator's guidelines sentence because of the amount of cocaine, thirty-six ounces, involved in the

offense. Sardin's offense level and criminal history category placed his guideline imprisonment range between thirty and thirty-seven months. The court thus made at least an eighty-three month upward departure when it sentenced Sardin to 120 months of imprisonment. The court made significantly lower departures in the cases of both Sardin's co-defendants, St. Julian and Davis. The court departed from Davis' sentence range of fifteen to twenty-one months by at least fifteen months when it sentenced Davis to thirty-six months. *See id.* at 1211. St. Julian's initial sentencing range of thirty to thirty-seven months was adjusted, at a minimum, by thirty-five months to seventy-two months. *See* St. Julian Brief, No. 89–6249, at 5. Thus, Sardin's departure was forty-eight months greater than St. Julian's and sixty-eight months greater than Davis', *notwithstanding the departure was made in each case for the identical quantity of drugs involved, thirty-six ounces of cocaine.*

The basis for Sardin's apparently disproportionate sentence is unclear. Upward departures must be based on circumstances "not adequately taken into consideration by the Sentencing Commission in formulating the Guidelines." *See* 18 U.S.C. § 3553(b) (1988). Sardin's sentencing range, without upward departure, already reflected that he purchased and possessed firearms in the course of his offense (United States Sentencing Comm'n Guidelines Manual § 2D1.8(b)(1) (1989)) (hereinafter Guidelines), and that he played a manager/supervisor role in the criminal activity (*id.* at § 3B1.1(a)). *See* rec., vol. III, at 14. Consequently, the court's upward departure could not have reflected enhanced punishment for this conduct.

The court stated that it departed upward from the guideline range because the conviction did not take into account the amount of drugs distributed. *See* rec., vol. II, at 77. Given that the quantity of the drugs alone compelled Sardin's upward adjustment, an unaccounted-for difference ex-

caine base with intent to distribute under 21 U.S.C. § 841(a)(1) (1988). Only Sardin, St. Jul- ian, and Davis have appealed their sentences.

ists between the degree of his upward departure and that of Davis and St. Julian.

■ In order to determine whether the degree of departure was reasonable, we must be able to examine not only the district court's reasons for a departure from the guidelines, but the reasons the "particular sentence" was imposed. *Davis,* at 1215. This directive is particularly compelling in Sardin's case because the degree of his departure is inexplicable given the facts in the record.

■ Because of the disparity in the sentence given Sardin as opposed to those given St. Julian and Davis, when each departure was based on the same conduct involving the same quantity of drugs, we must reverse and remand for resentencing.[2] The sentencing guidelines incorporate the principles of equality and proportionality. Their purpose is to narrow the "disparity in sentences imposed ... for similar criminal conduct by similar offenders." Guidelines Ch. 1, Pt. A.3. The guidelines mandate the sentencing court to consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). We have specifically recognized and endorsed this principle. *United States v. Jackson,* 921 F.2d 985, at 987–989 (10th Cir.1990) (en banc); *see also United States v. White,* 893 F.2d 276, 278 (10th Cir.1990); *Davis,* at 1215.

■ The district court's disproportionate upward departure from Sardin's guideline sentence range thwarts the very purpose

of the guidelines and is therefore invalid. Given that the three defendants here were "similar offenders" engaged in "similar criminal conduct" with respect to the reason given for their upward departure, they should have received equivalent upward departures. *See Jackson,* at 988, n. 1 (noting that to ensure uniformity and proportionality in sentencing offenders under the Guidelines, we must "treat different cases in roughly the same 'different' way"); *United States v. Williams,* 894 F.2d 208, 213 (6th Cir.1990) (co-defendants' sentences reversed where the district court had applied weapons possession enhancement inconsistently, thus contravening guidelines' purpose of reducing sentencing disparities); *United States v. Maples,* 501 F.2d 985 (4 Cir.1974) (co-defendants' sentences reversed where disparity arose from arbitrary factor).

This case is distinguishable from cases in which disparate sentences were upheld because the disparity was explicable given the facts in the respective record. *See, e.g., United States v. Trujillo,* 906 F.2d 1456, 1465 (10th Cir.1990) (disparate sentences for defendants similarly charged permissible where co-defendants' criminal records are "strikingly different"); *United States v. Meggers,* 912 F.2d 246, 251 (8th Cir.1990) (disparate sentences explained by differing criminal histories, one co-defendant's adjustments for obstruction of justice, and one co-defendant's non-guideline sentence and fine); *United States v. Schular,* 907 F.2d 294, 298–99 (2d Cir.1990) (disparate sentences explained by one defendant's aggravating role in crime); *United States v. Fozo,* 904 F.2d 1166, 1172 (7th

---

**2.** Although Sardin did not raise this issue as grounds for reversal before the sentencing court, we may exercise our discretion to resolve an issue not passed on below, which, if not addressed, might otherwise result in manifest injustice. *Singleton v. Wulff,* 428 U.S. 106, 121, 96 S.Ct. 2868, 2877, 49 L.Ed.2d 826 (1976); *Ryder v. City of Topeka,* 814 F.2d 1412, 1425 n. 25 (10th Cir.1987). We are not unmindful that this exercise of discretion is an exception to the general rule that a federal appellate court does not consider an issue not raised below. *Singleton,* 428 U.S. 109 at 120, 96 S.Ct. 2868 at 2877. However, one of the primary concerns underlying this rule is to bar a party from "'sit[ting]

idly by, watching error being committed.'" *Ryder v. City of Topeka,* 814 F.2d 1412, 1424 n. 25 (10th Cir.1987) (quoting *Neu v. Grant,* 548 F.2d 281, 287 (10th Cir.1977)). Such a concern would be misplaced in this context. Sardin and his co-defendants were sentenced separately and were not represented by the same attorneys. Therefore, Sardin simply had no frame of reference in which to determine whether his sentence was disparate when compared to that of his co-defendants. In the exercise of our discretion, we conclude that Sardin should not be prejudiced by his failure to raise the disparity issue to the detriment of substantial justice in this case.

Cir.1990) (disparate sentences explained by one defendant's attempt to improperly influence his co-defendant's testimony); *United States v. Rios,* 893 F.2d 479, 481 (2d Cir.1990) (co-defendants' disparate sentences permissible because they arose from "entirely different circumstances."). Here, no distinguishing factors were offered or appear in the record.

In consideration of the foregoing, we reverse and remand this case for resentencing not inconsistent with this opinion.