**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Oscar Marnell ST. JULIAN, II, a/k/a Davion Walker, Defendant–Appellant.**

No. 89–6249.

United States Court of Appeals, Tenth Circuit.

Dec. 18, 1990.

Timothy D. Leonard, U.S. Atty., James F. Robinson, Asst. U.S. Atty., Oklahoma City, Okl., for plaintiff-appellee.

Howard R. Haralson, Oklahoma City, Okl., for defendant-appellant.

Before McKAY, SEYMOUR, and BRORBY, Circuit Judges.

BRORBY, Circuit Judge.

Defendant Oscar Marnell St. Julian II (St. Julian, or Defendant) appeals his sentence imposed under the United States Sentencing Guidelines (U.S.S.G.).

### Background

St. Julian was indicted for violations of 21 U.S.C. §§ 841 and 856 (1988), specifically for conspiracy to distribute cocaine base, and maintaining a premises (crackhouse) for the purpose of distributing cocaine base. St. Julian pled guilty to the crack-house offense after negotiating a plea agreement under which the other charge was dropped.

Pursuant to the plea agreement, St. Julian cooperated with Government investigators. However, after his release pending sentencing, St. Julian wrongfully failed to appear at a sentencing hearing scheduled for June 30, 1989. St. Julian did appear for sentencing on July 11, 1989.

In determining St. Julian's sentence, and after resolving objections to the Presentence Report (PSR), the district court: 1) established a base offense level of 16 for the crackhouse offense, U.S.S.G. § 2D1.8(a); 2) assessed two levels for possession of firearms, U.S.S.G. § 2D1.8(b)(1); 3) rejected the PSR's recommended three level adjustment for defendant's alleged supervisory role, U.S.S.G. § 3B1.1(b); 4) assessed two levels for obstruction of justice based on St. Julian's failure to appear at the June 30, 1989 sentencing hearing, U.S.S.G. § 3C1.1; and 5) subtracted two levels for St. Julian's acceptance of responsibility, U.S.S.G. § 3E1.1(a), all resulting in a total offense level of 18. The court also adopted the PSR recommendation of criminal history category II, resulting in a guideline range of 30 to 37 months of incarceration. Finally, the court decided to depart upward from the sentencing range, based on its finding that St. Julian was involved with 36 ounces of cocaine base.

Ultimately, the court imposed a sentence of six years (seventy-two months) imprisonment, three years of supervised release, and a fifty dollar special assessment.

St. Julian was one of three co-defendants who pled guilty to the crackhouse offense in this case. Co-defendant Davis received a sentence of 36 months; *see United States v. Davis,* 912 F.2d 1210 (10th Cir.1990). Co-defendant Sardin received a sentence of 120 months; *see United States v. Sardin,* 921 F.2d 1064 (10th Cir.1990). All three separately appealed their sentences.

St. Julian raises four issues on appeal; each is discussed below.

## Use of Information

██ St. Julian first argues the sentencing court used certain drug-quantity information in violation of the fundamental fairness requirements of the fifth amendment due process clause. St. Julian claims the 36–ounce figure upon which the court based its upward departure was obtained either from him under the plea agreement, which provided such information would not be used against him, or from his co-defendants, who merely corroborated information that he first provided. The Government insists the co-defendants were independent sources for the drug-quantity information upon which upward departure was based.

Unlike a legal challenge to an application of the sentencing guidelines, this argument presents a question of fact: whether St. Julian was, in fact, the source of the information upon which the district court relied in deciding to depart upward from the initial guideline range. Questions of fact are reviewed under the clear error standard. *United States v. Beaulieu,* 893 F.2d 1177, 1181–82 (10th Cir.), *cert. denied,* — U.S. —, 110 S.Ct. 3302, 111 L.Ed.2d 811 (1990).

St. Julian's claim that the Government wrongfully used information that he provided is unfounded. At sentencing, the district court agreed not to use information obtained from St. Julian that the Government did not know at the time it made the plea bargain. However, the Government provided testimony, based on interviews with co-defendants Sardin and Davis, that roughly 50 ounces of cocaine base were imported through the conspiracy of which St. Julian was a member. Defense counsel failed to rebut that testimony. On appeal, St. Julian fails to allege any facts that would enable this court to find clear error in the district court's implicit finding he was not, in fact, the ultimate source of the drug quantity information. As that finding is supported by the record, it will not be disturbed. St. Julian's reliance on *Unit-*

*ed States v. Shorteeth,* 887 F.2d 253 (10th Cir.1989), and U.S.S.G. § 1B1.8 is misplaced. *See Davis,* 912 F.2d at 1213. Because the Government did not wrongfully use information provided by St. Julian, those authorities are inapplicable to the facts of this case. *Id.*

St. Julian's argument that he was the ultimate, although indirect, source of the drug quantity information is essentially identical to an unsuccessful argument made by co-defendant Davis. *Davis,* 912 F.2d at 1213–15. We rejected Davis's argument that the use of co-defendants' information violated either his plea agreement or his right to confront witnesses, and affirmed the district court's use of the co-defendants' statements as a basis for upward departure in Davis's sentence. *Id. See also, Beaulieu,* 893 F.2d at 1179–81 (upholding the sentencing judge's consideration of testimony from separate trial of defendant's co-conspirators in determination of appropriate sentence under guidelines).

St. Julian further refines Davis's argument with the factual claim that his co-defendants merely corroborated information that he first gave to the police. As we noted in *Davis,* however, "[t]here is no indication that the co-defendants' statements were elicited as a result of Davis' plea agreement with the government, and Davis provided no evidence that, had he refused to cooperate, his co-defendants likewise would not have offered the information about the correct quantity of drugs involved." *Davis,* 912 F.2d at 1213. This fully applies to St. Julian. The use of co-defendants' statements does not violate any of St. Julian's rights.

St. Julian also asserts duplicity on the part of a witness, alleging "[t]he same government witness testified at each sentencing and claimed to have obtained the information from a Defendant other than the one being sentenced at the time." Unfortunately, this argument was neither presented to the sentencing judge nor used to impeach the witness in question. Given the seriousness of the allegation, however, we have considered St. Julian's claim and

cross-checked sentencing transcripts of his co-defendants. We are unable to agree with his version of the proceedings. The following exchange between counsel for co-defendant Sardin and the Government witness is instructive:

Q. The forty ounces of crack or cocaine base that you have told the Judge you have the independent knowledge of, those amounts came from Oscar St. Julian?

A. Yes. *He corroborated the information that I had.*

*Sardin,* No. 89–6189, Transcript of Sentencing Proceedings, May 17, 1989, at 56 (emphasis added). The clear implication of this testimony is that St. Julian was not the sole or even the primary source of the drug quantity information. St. Julian has failed to demonstrate otherwise.

As we stated in *Davis,* "[w]hile there may be some concern that the use of the co-defendants' information against [defendants] may lead future defendants to refuse to cooperate in investigations, it is clear that the sentencing judge did not use [defendant's] own information against him. The plea agreement was not violated by the use of statements of ... co-defendants." 912 F.2d at 1213. Neither was due process violated by the use of co-defendants' information against St. Julian.

### *Validity of Upward Departure*

■ St. Julian next argues the district court violated guideline procedures in its upward departure because drug quantity is not an appropriate basis for departure where the base offense is maintaining a crackhouse.

This court reviews the validity of upward departures under the three-step process set forth in *United States v. White,* 893 F.2d 276 (10th Cir.1990). Under the first step of the *White* analysis, "we determine whether the circumstances cited by the district court justify a departure from the Guidelines." *Id.* at 277. The sentencing court can depart from the guideline range only if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consid-

eration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b) (1988).

The sentencing court here identified drug quantity—specifically, defendant's involvement with 36 ounces of cocaine base—as the "grounds for departure from the guidelines suggested for this offense." This court upheld the use of drug quantity as an aggravating circumstance warranting upward departure for the offense of maintaining a crackhouse in the sentencing of St. Julian's co-defendant Davis. *See Davis,* 912 F.2d at 1213, 1215. Because the quantity of illegal drugs was not a circumstance adequately taken into consideration by the Sentencing Commission in its formulation of the sentencing guidelines for this offense, that factor justified upward departure here. The first step of *White* is thus fulfilled.

The second step of the *White* analysis involves a review of factual determinations under the clearly erroneous standard. *White,* 893 F.2d at 278. Our consideration of St. Julian's first argument anticipated this step. As stated above, we find no clear error in the sentencing court's factual determination that St. Julian was involved with 36 ounces of cocaine base. The second *White* step is also satisfied.

■ Under *White's* third step we consider the reasonableness of the degree of upward departure beyond the guideline range. *Id. See* 18 U.S.C. § 3742(e)(3) (1988), which mandates that we vacate a sentence outside the guideline range if it is unreasonable. Although St. Julian has not specifically challenged the reasonableness of the sentencing court's degree of upward departure, our concerns regarding the dispositions of his co-defendants' appeals prompt us to consider the issue. *See Davis,* 912 F.2d at 1215 (remand for explanation of reasons for the extent of departure above the guideline range), and *Sardin,* 921 F.2d at 1067 (reversing and remanding sentence for unexplained disparity of upward departure as compared with sentences of co-defendants Davis and St. Julian).

18 U.S.C. §§ 3742(e)(3) and 3553(a) (1988) provide appellate courts guidance in the task of reviewing the reasonableness of sentences. *White* summarized the statutory directives, stating:

> To determine whether the degree of departure is reasonable, we must consider the district court's proffered justifications as well as such factors as: the seriousness of the offense, the need for just punishment, deterrence, protection of the public, correctional treatment, the sentencing pattern of the Guidelines, the policy statements contained in the Guidelines, and the need to avoid unwarranted sentencing disparities.

893 F.2d at 278. Even with such guidance, the process of assaying the "reasonableness" of a particular degree of departure remains enigmatic.

To facilitate better appellate review of the reasonableness of degrees of departure, in recent cases we emphasize the importance of the sentencing court's "proffered justifications," *id.,* or statement of reasons for the imposition of a specific sentence. Such a statement of reasons is a statutory requirement set forth in 18 U.S.C. § 3553, which provides:

> (c) **Statement of reasons for imposing a sentence.**—The court, at the time of sentencing, shall state in open court *the reasons for its imposition of the particular sentence,* and, if the sentence—
>
> . . . .
>
> (2) is not of the kind, or is outside the range, described in subsection (a)(4), *the specific reason for the imposition of a sentence different from that described.*

18 U.S.C. § 3553(c) (1988) (emphasis added). In *United States v. Gardner,* 905 F.2d 1432 (10th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 202, 112 L.Ed.2d 163 (1990), we explained, "[t]he language of the statute makes it clear that it is not enough to state simply the reasons for a departure from the guidelines; *the reasons for the 'particular sentence' imposed must also be set forth." Id.* at 1437 (emphasis added). The requirement of a specific statement of reasons is emphasized in other decisions as

well. *See United States v. Jackson,* 921 F.2d 985, 990 (10th Cir.1990) (en banc); *United States v. Freitekh,* 912 F.2d 421, 423 (10th Cir.1990); *United States v. Harris,* 907 F.2d 121, 124 (10th Cir.1990); *United States v. Zamarripa,* 905 F.2d 337, 342 (10th Cir.1990); *United States v. Smith,* 888 F.2d 720, 723–24 (10th Cir.1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 1786, 108 L.Ed.2d 788 (1990). The explanation provided by the sentencing court must be evaluated against this backdrop of authority.

The district court set forth its reasons for upward departure, and for the sentence imposed in this case, in comments concluding the Sentencing Hearing of July 11, 1989. Specifically, the court stated:

> You've stood before another Court and were placed on probation and that Court placed a certain amount of confidence in you, and you rewarded that Court by coming to Oklahoma to assist in the sale of cocaine base, a large amount of cocaine base.
>
> And I have to presume that that cocaine is now part of our society here in Oklahoma City as a result of your cooperating to bring it here.
>
> I'm satisfied that based on the amount of cocaine involved, that being the 36 ounces of base, that that is grounds for departure from the guidelines suggested for this offense.
>
> I'm satisfied that the sentence the Court will impose will satisfy the requirements of 18 U.S.Code Section 3553, which requires the Court to consider the nature and the circumstance of the offense and the history and the characteristics of the Defendant, that the sentence imposed reflect[s] the seriousness of the offense and will promote respect for the law and provides for just punishment and adequate defense for the protection of the public.
>
> Considering all these matters, it's the judgment of the Court that a departure upward is appropriate, and the Defendant will be sentenced to the Bureau of Prisons for imprisonment for a term of six years.

The sentencing court enunciated the general factors that guided its sentencing decision, i.e., the seriousness of the offense, the need for respect for the law, just punishment, and protection of the public. The court did not, however, explain how those valid considerations produce any particular sentence given the specific facts and circumstances of this case, nor did the court identify any specific facts as supporting its conclusions. We have stated that "[a] general recitation is an insufficient statement of the reasons required by § 3553(c). Specificity of reason is mandated by the statute...." *Smith,* 888 F.2d at 724 (citation omitted). Despite studying the above-quoted statement of reasons, we can find in the record no specific facts or reasons for the "particular sentence" imposed. 18 U.S.C. § 3553(c). The court provided no "reasonable methodology hitched to the Sentencing Guidelines to justify the reasonableness of the departure" to the six-year term. *Harris,* 907 F.2d at 124. The district court simply did not explain *how* it arrived at the six year figure.

■ Without such an explanation, we are unable to perform our duty, mandated in § 3742, to "determine whether the sentence ... is outside the applicable guideline range, and is unreasonable, having regard for ... the reasons for the imposition of the particular sentence, as stated by the district court...." 18 U.S.C. § 3742(e)(3)(B) (1988). *See Harris,* 907 F.2d at 123–24; *Smith,* 888 F.2d at 724. Our ability to "engage in the kind of meaningful review intended by § 3742," *Gardner,* 905 F.2d at 1437, requires that the district court's explanation *and* its method of selecting an appropriate degree of departure entail more than identification of the rejected guideline range and the sentence imposed instead.

In our view, a sentencing court that departs must employ a specific method to determine the degree of departure. In this case the sentencing court correctly identified an aggravating circumstance not adequately taken into consideration by the Sentencing Commission in formulating the guidelines, *see* 18 U.S.C. § 3553(b), that is, St. Julian's involvement with 36 ounces of cocaine base. This fact demands an adjustment in the offense level. The next step is to turn to the guidelines and determine the most appropriate offense level.

This step is directly analogous to the prescribed method for calculating degree of departure based on criminal history. *See* U.S.S.G. § 4A1.3, p.s. In that situation, the appropriate criminal history category is selected using "as a reference, the guideline range for a defendant with a higher or lower criminal history category, as applicable." *Id.* The use of this method produces both a degree of departure based upon the facts justifying departure, and a guideline range that most closely resembles that of most defendants with similar criminal history. In the case of offense level departures, the court must look to the offense level specified for a defendant whose offense conduct most closely resembles that of the defendant being sentenced. *Cf.* U.S.S.G. § 4A1.3, p.s.

■ We emphasize the degree of departure is a matter within the sound discretion of the sentencing court.[1] *White,* 893 F.2d at 279. *See also, Jackson,* 921 F.2d at 990, 991. This does not mean, however, that once the decision to depart is properly made, a sentence may be imposed anywhere between the minimum and maximum authorized by statute. The guidelines are not discarded at this point in the sentencing. *Gardner,* 905 F.2d at 1436 (quoting *United States v. Ferra,* 900 F.2d 1057, 1061–62 (7th Cir.1990)).

Once the decision to depart has been made, the guidelines must again be consulted, using the facts and circumstances that justify departure to arrive at the most appropriate offense level or criminal history category, as applicable. *See Jackson,* 921

---

1. If the difference between the guideline range and the departure sentence is great, the trial court should consider the implications of that disparity in determining the appropriate standard of proof for the facts considered in sentencing. *See McMillan v. Pennsylvania,* 477 U.S. 79, 91–92, 106 S.Ct. 2411, 2418–2419, 91 L.Ed.2d 67 (1986); *United States v. Kikumura,* 918 F.2d 1084 (3rd Cir.1990).

F.2d at 990. Having done this, a new sentencing range is obtained and the sentencing court may then conclude the adjusted sentencing range is inappropriate. If so, the sentencing court may utilize its discretion in selecting another sentence, based on facts and circumstances that still have not been adequately considered. In all cases, the court must enunciate in the record the specific facts, circumstances or reasons guiding its final decision. We emphasize that the first step is to find and articulate the facts justifying the departure. The second step is to utilize these facts to properly calculate either a new offense level, or a new criminal history category, or both. In the case before us, the offense level should be adjusted in accordance with the sentencing court's finding of specific facts warranting departure, that is, the quantity of drugs.

The result of this structured approach is adherence to the guideline goals of uniformity and proportionality. *See Jackson,* 921 F.2d at 988; *Gardner,* 905 F.2d at 1436. Explanation of the particular method utilized by the sentencing court further enables this court to measure the reasonableness of the sentence imposed. We also believe that information regarding the court's reasons for the chosen degree of departure is critical to the Sentencing Commission in making future amendments to the guidelines. *See* U.S.S.G. Ch. 1, Pt. A, intro. comment; *Jackson,* 921 F.2d at 992.

We note the presentence report in this case merely states "[t]he Court may want to consider the possibility of an upward departure from the guidelines. The guideline for managing a drug establishment does not take into consideration the amount of drugs involved in the offense...." We believe better sentencing would result if the presentence report calculated an alternate guideline range, using as a reference the most appropriate offense level or criminal history category, when the possibility of departure is reported. The alternate offense level or criminal history category should reflect and be based upon the cir-

cumstances justifying the departure. The reporting of alternate guideline ranges will thus provide the sentencing court meaningful assistance and give the defendant a better opportunity to meaningfully participate and present his or her evidence, arguments and objections concerning both the departure and the amount or degree of the departure.

■ We are not unmindful of the problems facing a sentencing court at the time of sentencing. A sentencing court is not obliged to spend hours crafting a detailed explanation of the facts and circumstances leading to a sentence. Nevertheless, once the court assumes the burden of the "rare[ ]" step of departure, *Jackson,* at 989, it must also bear the corresponding burden of ensuring the record contains sufficient information to enable a reviewing court to determine how and why the sentencing court reached the degree of departure imposed. That information must include the court's explanation of intermediate steps between departure and selection of the final sentence, including reasons why the intermediate steps were themselves considered inappropriate.

Because the sentencing court's explanation does not provide "the specific reason for the imposition of [the] sentence" required by 18 U.S.C. § 3553(c), we must vacate the sentence and remand to the district court for resentencing. *See United States v. Beaulieu,* 900 F.2d 1531, 1535 (10th Cir.), *cert. denied,* —— U.S. ——, 110 S.Ct. 3252, 111 L.Ed.2d 762 (1990); *Smith,* 888 F.2d at 723–24. Although our previous cases have specifically dealt with courts failing to adequately explain the reasons for departure itself, *see Beaulieu,* 900 F.2d at 1535; *United States v. Emrick,* 895 F.2d 1297, 1298 (10th Cir.1990); *White,* 893 F.2d at 278; the statutory directive of § 3553(c) requires the same result in the case of failure to adequately explain the *degree* of departure.[2] *See Gardner,* 905 F.2d at 1437.

---

2. As noted above, § 3553 requires that the court "*shall state* in open court *the reasons for its imposition of the particular sentence, and* ...

the specific reason for the imposition of a sentence different from that described." 18 U.S.C. § 3553(c)(2) (1988) (emphasis added).

Despite the vacation of St. Julian's sentence and remand for resentencing, it makes good sense to consider St. Julian's remaining arguments now.

### Obstruction of Justice

St. Julian also challenges the district court's two-level obstruction of justice adjustment for his failure to appear at the scheduled sentencing hearing of June 30, 1989.

■ 18 U.S.C. § 3742(e) (1988) requires this court to "give due deference to the district court's application of the guidelines to the facts." Where the issue involves a mixed question of law and fact, a sliding-scale standard approaching *de novo* review may be appropriate. *United States v. Roberts,* 898 F.2d 1465, 1469 (10th Cir.1990).

■ U.S.S.G. § 3C1.1, "Willfully Obstructing or Impeding Proceedings," directs the sentencing court to increase the offense level by two levels "[i]f the defendant willfully impeded or obstructed, or attempted to impede or obstruct the administration of justice during the investigation or prosecution of the instant offense...." The commentary to § 3C1.1 states, "[t]his section provides a sentence enhancement for a defendant who engages in conduct calculated to mislead or deceive authorities or those involved in a judicial proceeding, or otherwise to willfully interfere with the disposition of criminal charges...." *Id.,* comment. The application notes provide an expressly "not exclusive" set of examples of conduct that may provide a basis for applying the adjustment. These include: destroying or concealing material evidence; testifying untruthfully or suborning perjury; producing altered, forged, or counterfeit documents; threatening or otherwise tampering with witnesses or jurors; and furnishing material falsehoods to a probation officer. U.S.S.G. § 3C1.1, comment. (n.1(a)-(e)).

In deciding to apply this adjustment to St. Julian, the district court stated:

Adjustment for obstruction of justice, I'm adding two points. The Defendant was to be sentenced last Friday and he failed to appear. He did voluntarily turn himself in, which certainly is to his credit, but that doesn't take away the fact that he was ordered to appear at this Court last Friday and did not do so.

Although failure to appear at a sentencing hearing does not closely resemble the examples provided with § 3C1.1, we are unable to conclude this adjustment was imposed in violation of law, 18 U.S.C. § 3742(e)(1) (1988), or as a result of an incorrect application of the guidelines, 18 U.S.C. § 3742(e)(2) (1988). St. Julian's failure to appear did "interfere with the disposition of criminal charges," U.S.S.G. § 3C1.1, comment., and did "impede[] or obstruct[] ... the administration of justice during the ... prosecution of the instant offense," § 3C1.1, by delaying the imposition of his sentence for some ten days.

According the district court the due deference required by § 3742(e), as we must, the court's imposition of the two-level adjustment for obstruction of justice is upheld.

### Weapons Possession

Finally, St. Julian challenges the district court's assessment of two offense levels for possession of a firearm during commission of the offense. St. Julian challenges the factual basis for the assessment, arguing he was not present when the guns were purchased, and not in possession of the guns when they were confiscated.

■ Allegations that the information before a sentencing court did not support the court's finding are reviewed under the "clearly erroneous" standard. *Beaulieu,* 893 F.2d at 1181–82; 18 U.S.C. § 3742(e)(4) (1988). We will not reverse the district court unless the court's finding was not supported by the record, or unless we are left, after reviewing all the evidence, with the "definite and firm conviction that a mistake has been made." *Beaulieu,* 893 F.2d at 1182. Our review of the information presented to the district court compels the conclusion that its finding was well supported by the record.

■ U.S.S.G. § 2D1.8, "Renting or Managing a Drug Establishment," directs the sentencing court to increase the offense level by two "[i]f a firearm or other dangerous weapon was possessed during commission of the offense...." U.S.S.G. § 1B1.3(a)(1) directs sentencing courts to consider, in determining whether to apply a specific offense characteristic:

> *all acts* and omissions committed or aided and abetted by the defendant, or *for which the defendant would be otherwise accountable*, that occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense, or that otherwise were in furtherance of that offense;

U.S.S.G. § 1B1.3(a)(1) (emphasis added).

The district court heard testimony placing St. Julian: 1) with the packaging for two semi-automatic firearms in the motel room from which drugs were distributed; 2) in the stolen automobile containing the firearms; and 3) with the co-defendants who selected and arranged the purchase of the weapons, although he was not with them when the weapons were actually purchased. The judge also heard testimony that the weapons were purchased to provide protection during the drug sales. Considering this evidence, the judge stated:

> As far as the use of firearms, I'm satisfied that there is adequate evidence that firearms were used in the perpetration of the offense in question, and even if this Defendant did not specifically have possession of the weapon, I'm satisfied from the evidence that he was intimately involved with those weapons.

We find no clear error in this decision.

■ Furthermore, given St. Julian's involvement in a conspiracy, the district court was entitled, if not required, to attribute to St. Julian weapons possessed by his co-conspirators in furtherance of the conspiracy if the possession was known to St. Julian or was reasonably foreseeable by him. *See United States v. Aguilera–Zapata*, 901 F.2d 1209, 1213–15 (5th Cir.1990) (concluding that district court was justified in considering a co-defendant's foreseeable weapons possession for purposes of sentencing enhancement despite the dismissal of conspiracy charges against defendant, where weapon was possessed in furtherance of jointly undertaken criminal activity); *United States v. White*, 875 F.2d 427, 433 (4th Cir.1989) (affirming sentence enhancement upon holding that defendant was "otherwise accountable," under U.S.S.G. § 1B1.3(a)(1), for co-defendant's foreseeable possession of a pistol, despite lack of proof that defendant physically possessed the weapon). Given the district court's finding concerning St. Julian's involvement with the weapons, no remand on the issue of foreseeability is necessary here.

Finding no clear error in the district court's finding, we uphold the increase of St. Julian's base offense level by two levels for possession of a firearm during commission of the offense.

### Conclusion

The district court's decision is AFFIRMED as to the basis for departure, and the offense level adjustments for firearms possession and obstruction of justice. Because of the inadequate statement of reasons provided by the district court in sentencing St. Julian, that sentence is VACATED. This matter is REMANDED to the district court for resentencing, including an adequate and specific statement of reasons supporting the decision to depart, the degree of departure, and the sentence imposed.