**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**SEP 20 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERCA,

      Plaintiff-Appellee,

v.

JOHN ADRIAN DRISKILL, JR.,

      Defendant-Appellant.

No. 98-6331
(D.C. No. CR-98-30-C)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, Chief Judge, **EBEL** and **MURPHY,** Circuit Judges.

John Adrian Driskill, Jr. entered a conditional guilty plea to, inter alia, manufacturing methamphetamine. He challenges the denial of his motion to suppress and the computation of drug quantities for determining his sentence. We affirm.

On January 30, 1998, the Oklahoma Bureau of Narcotics acted on a tip that

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

Albert Mize was manufacturing methamphetamine in a storage unit at Storage USA. The manager of Storage USA informed police officers that Mr. Driskill had just entered the facility in a Camaro pulling a trailer, and was waiting for Mr. Mize to rent another unit. Agent Roberts drove to Mr. Driskill's location at Storage USA and parked in a manner that did not block him. After Agent Roberts approached Mr. Driskill and identified himself, Mr. Driskill immediately reached for the floor of his vehicle. Believing Mr. Driskill was reaching for a gun, Agent Roberts drew his weapon, instructed Mr. Driskill to "freeze," and demanded to "see his hands." Rec., vol. III, at 22-23. Mr. Driskill got out of his vehicle and fled from police over the fence surrounding the property.

After Mr. Driskill's abrupt departure from his vehicle, it began to roll forward because it was still in gear with the engine running. When it came to rest against a building, Agent Roberts got into the vehicle, placed it in park, and turned off the engine. At that time he saw two guns in Mr. Driskill's vehicle and smelled the "strong odor" of chemicals consistent with a methamphetamine laboratory. He then retrieved his drug detection canine, which alerted to both the vehicle and the trailer. Upon searching the vehicle and trailer, he discovered methamphetamine, precursor chemicals, and equipment used to manufacture methamphetamine.

At Mr. Driskill's suppression hearing, the district court held Agent Roberts

had reasonable suspicion and a right to approach Mr. Driskill's vehicle. The court further found that Agent Roberts believed Mr. Driskill was reaching for a weapon. Turning to the search of Mr. Driskill's vehicle and trailer, the court determined that Mr. Driskill "abandoned the vehicle and abandoned any reasonable expectation of privacy" when he fled. Rec., vol. III, at 51-52. Based on these findings, the court found Mr. Driskill's detention and the search reasonable under the Fourth Amendment. The district court's determination of reasonableness under the Fourth Amendment is a conclusion of law which we review *de novo*. *See United States v. Davis*, 94 F.3d 1465, 1467 (10th Cir. 1996).

Mr. Driskill first argues the district court violated his due process rights to notice and a fair opportunity to be heard by finding without notice that he abandoned his property and denying his motion to suppress based on that theory when it was never argued by the government and he was not afforded an opportunity to rebut it. In response, the government analogizes the district court's substitution of a different legal theory to an appellate court's agreement with a trial court's result, but not its reasoning. *See, e.g.*, *United States v. Soto-Cervantes*, 138 F.3d 1319, 1322 (10th Cir. 1998).

An appellate court may affirm on any ground not raised in the trial court only if the record is sufficiently clear to permit reliance on that ground, and if both parties had an adequate opportunity to develop the record on the issue. *See*

*Griffith v. Colorado Div. Youth Serv.*, 17 F.3d 1323, 1328 (10th Cir. 1994); *Seibert v. University of Okla. Health Sciences Center*, 867 F.2d 591, 597 (10th Cir. 1989); *see also United States v. Parr*, 843 F.2d 1228, 1232 (9th Cir. 1988) ("We are foreclosed, however, from affirming the district court's suppression of evidence on a theory not presented below when by doing so we unfairly deprive the defendant of the opportunity to adduce evidence.").  Whether a defendant "abandoned" property in the Fourth Amendment sense is a fact-intensive determination which would ordinarily require an adequately developed record. *See e.g.,* LaFave, Search and Seizure, § 2.5(a).  Nevertheless, even assuming Mr. Driskill could or would have put on evidence that he did not abandon his vehicle, any error the district court may have made in relying on an abandonment theory was harmless in light of our conclusion that Mr. Driskell's detention and the subsequent search were reasonable based on the record and theories presented in the district court.[1]

Police officers do not violate the Fourth Amendment when they approach

---

[1] Mr. Driskill cites *Cole v. Arkansas*, 333 U.S. 196 (1948), to support his argument that the court's reliance on a theory he never had an opportunity to rebut denied him due process.  *See id.* at 200-201 (reversing conviction where evidence did not support the crime charged, but did support finding of guilt of another crime).  The facts of *Cole* are distinguishable in an important respect.  Rather than substituting a different criminal charge, the trial court here substituted only a different legal theory to deny Mr. Driskill's motion to suppress.

an individual simply to ask questions. *See Florida v. Royer*, 460 U.S. 491, 497 (1983) (plurality opinion); *United States v. Bell*, 892 F.2d 959, 965 (10th Cir. 1989). Agent Roberts testified he merely intended to ask Mr. Driskill about his relationship with Mr. Mize and his reason for renting a storage unit with him. Significantly, Agent Roberts did not block Mr. Driskill's vehicle when he made the initial approach.

Mr. Driskill argues that by ordering him out of his car at gunpoint, Agent Roberts effectively arrested him. We have previously held the use of firearms does not transform a *Terry* stop into a full custodial arrest for which probable cause is required where the totality of the circumstances reasonably warrant the use of such forceful techniques. *See, e.g., United States v. Perdue*, 8 F.3d 1455, 1462-63 (10th Cir. 1993); *United States v. Merkley*, 988 F.2d 1062, 1064 (10th Cir. 1993). We agree with the district court that the totality of the circumstances here support Agent Roberts' reasonable suspicion that Mr. Driskill was reaching for a weapon. By ordering Mr. Driskill to freeze and show his hands, Agent Roberts limited his demands to only those absolutely required for his own immediate protection. *See Perdue*, 8 F.3d at 1462 (police officers are not required to take unnecessary risks and may take such steps as are reasonably necessary to protect their personal safety); *Terry v. Ohio*, 392 U.S. 1, 23-24

(1968).  Agent Roberts acted reasonably and within the confines of *Terry*.[2]

Mr. Driskill next challenges the warrantless search of his vehicle as unreasonable under the Fourth Amendment.[3]  Agent Roberts' drug detection canine positively alerted to Mr. Driskill's vehicle and trailer prior to the search. Drug dog sniffs are not searches within the meaning of the Fourth Amendment and require no supporting reasonable suspicion.  *See United States v. Place*, 462 U.S. 696, 706-07 (1983); *United States v. Morales-Zamora*, 914 F.2d 200, 204-05 (10th Cir. 1990).  Once Agent Roberts' canine positively alerted to Mr. Driskill's vehicle and trailer, probable cause existed to search the property without first obtaining a warrant.  *See United States v. Ludwig*, 10 F.3d 1523, 1527 (10th Cir. 1993).  The district court properly denied Mr. Driskill's motion to suppress.

Mr. Driskill also challenges the district court's drug quantity determination made for sentencing purposes, arguing the determined amount was not based on credible evidence.  The United States Sentencing Guidelines require that when

---

[2]Mr. Driskill cites us to *Ybarra v. Illinois*, 444 U.S. 85, 93 (1979), for his contention that the officers never had reasonable suspicion to detain him.  The Supreme Court held that Mr. Ybarra's presence at a bar being searched under a warrant, without more, was insufficient to support reasonable suspicion to justify a *Terry* stop.  Agent Roberts did not detain Mr. Driskill merely because of his presence at Storage USA, however, but because of his gesture towards the floorboard.

[3]There was ambiguity in the record as to whether a search warrant was ever procured for Mr. Driskill's vehicle and trailer.  The government does not urge on appeal the existence of a search warrant and we therefore assume no warrant was issued.

any factor used to compute sentencing is in dispute, the information ultimately relied upon by the sentencing court must have "sufficient indicia of reliability to support its probable accuracy." U.S.S.G. § 6A1.3(a). *See also United States v. Ruiz-Castro*, 92 F.3d 1519, 1534 (10th Cir. 1996) (when drugs underlying conviction are not seized, trial court may rely on estimate of drug quantity to establish defendant's guideline offense level as long as information relied on has some basis of support in the facts). We review the district court's factual findings as to the quantity of drugs attributable to a defendant only for clear error. *See United States v. Morales*, 108 F.3d 1213, 1225 (10th Cir. 1997).

Agent Haskins testified at Mr. Driskill's sentencing hearing that he interviewed Mr. Driskill several times in July and September 1997. At that time, Mr. Driskill admitted to manufacturing approximately one pound of methamphetamine per week with Mr. Mize, from the first week of August 1996 through June 21, 1997, when Mr. Driskill was incarcerated on unrelated charges. Agent Haskins computed the total drug quantity manufactured during this time period by counting the number of weeks, subtracting time periods when Mr. Driskill was incarcerated, and arriving at an approximate total quantity of methamphetamine manufactured by Mr. Driskill of fifty pounds. The district court determined fifty pounds was "the most conservative estimate" and accepted that amount because it was "the only fair thing to do when the evidence is in

conflict." Rec., vol. V, at 51-52. The court held this quantity was supported by Agent Haskins' testimony concerning Mr. Driskill's admissions, Mr. Mize's admissions, and other informants' statements.

Mr. Driskill argues this evidence is an insufficient basis for determining the drug quantity because his admissions were not used to compute Mr. Mize's sentence and thus cannot be considered reliable. Mr. Mize's sentence was computed under a plea agreement different from Mr. Driskill's, however, which precluded Mr. Mize's own statements regarding the quantity of drugs from being used against him at sentencing. Mr. Mize's sentence is thus irrelevant. *See United States v. Sardin*, 921 F.2d 1064, 1067 (10th Cir. 1990) (citing cases where co-defendants' disparate sentences upheld because disparity was explicable from the record). We are not persuaded the district court's finding regarding the quantity of drugs for which Mr. Driskill was responsible was clearly erroneous. *See United States v. Cook*, 949 F.2d 289, 296 (10th Cir. 1991).

We **AFFIRM**.

ENTERED FOR THE COURT

Stephanie K. Seymour
Chief Judge