UNITED STATES of America, Plaintiff–Appellee,

v.

Jeffrey K. STUMPF, Defendant–Appellant.

No. 90–8043.

United States Court of Appeals, Tenth Circuit.

July 3, 1991.

Bernard Q. Phelan, Cheyenne, Wyo., for defendant-appellant.

David A. Kubichek, Asst. U.S. Atty. (Richard A. Stacy, U.S. Atty., and John R. Green, Asst. U.S. Atty., on the brief), District of Wyoming, Cheyenne, Wyo., for plaintiff-appellee.

Before McKAY, SETH, and LOGAN, Circuit Judges.

McKAY, Circuit Judge.

The appellant, Jeffrey K. Stumpf, pled guilty to two criminal charges and was duly sentenced. The district court imposed a sentence which represents an upward departure from the Sentencing Guidelines. Mr. Stumpf now appeals that sentence.

On April 14, 1989, Mr. Stumpf and an associate, Johnny Wayne Colacino, were indicted on one count of possession of firearms after having previously been convicted of a felony in violation of 18 U.S.C. § 922(g)(1) (1988), and ten counts of posses-

sion of a destructive device in violation of 26 U.S.C. § 5861(d) (1988), as well as aiding and abetting in violation of 18 U.S.C. § 2 (1988). The destructive devices at issue were ten trip-wire pipe bombs manufactured by Mr. Stumpf. On June 26, 1989, Mr. Colacino pled guilty to being a felon in possession of a firearm; the government, in return, dismissed the remaining counts. Mr. Colacino is not a party to this appeal. On January 5, 1990, Mr. Stumpf pled guilty to the count of possession of a firearm by a felon and to a single count of possession of a destructive device. Pursuant to a plea agreement, the remaining counts were dismissed.

The presentence report established an offense level of twelve and a criminal history level of III which, under the Sentencing Guidelines applicable at the time, yielded a sentencing range of fifteen to twenty-one months. After a hearing, the district court imposed a sentence of thirty-eight months' imprisonment and three years of supervised release, plus a special assessment of $100.00. Mr. Stumpf asserts that this upward departure is (1) unreasonable, and (2) an unconstitutional *ex post facto* application of the law because it relies upon sentencing guidelines not in effect at the time of the offense.

Our review of an upward departure from the Sentencing Guidelines involves three steps: (1) *de novo* review of whether the circumstances cited by the district court justify the departure, (2) review of the underlying factual determinations under a clearly erroneous standard, and (3) review to determine whether the degree of departure is reasonable. *United States v. White*, 893 F.2d 276, 278 (10th Cir.1990).

After announcing its intention to depart upward, the district court began a lengthy explanation of its reasons for doing so. The court articulated several justifications: (1) Mr. Stumpf was very involved in and sophisticated about the acquisition and building of weapons of the "anti-personnel variety," record, vol. 4, at 114; (2) Mr. Stumpf had previously received lenient treatment for serious offenses because of his youth, *id.* at 115; (3) Mr. Stumpf appar-

ently lacked recognition of the gravity of his previous offenses, and seemed unable to learn from experience, *id.* at 116, 123; (4) Mr. Stumpf professed to accept responsibility for his actions and received the appropriate reduction in his offense level, but the court felt that his testimony indicated that he continued to blame others for his criminal behavior and was therefore likely to continue such behavior, *id.* at 118–19; (5) Mr. Stumpf's activities posed a threat to public safety, *id.* at 119–20, 122; (6) Mr. Stumpf believed that he was selling weapons for use by an illegal paramilitary organization, *id.* at 122, and Mr. Stumpf had exercised a leadership role in the scheme. *Id.* at 116.

■■■ The court may depart upward for reasons not specifically listed in the Sentencing Guidelines. United States Sentencing Commission, *Guidelines Manual* § 5K2.0, policy statement (Nov.1990). However, in this case the question of whether the departure was justified is easily answered because at least two of the justifications articulated by the district court are specifically mentioned by the Sentencing Commission. First, a court may depart upward "when the criminal history category significantly underrepresents the seriousness of the defendant's criminal history or the likelihood that the defendant will commit further crimes." *Id.* at § 4A1.3, p.s. An example of a defendant in this category is one who "for appropriate reasons ... had previously received an extremely lenient sentence for a serious offense." *Id.* Second, a court may depart if public safety is significantly endangered. *Id.* at § 5K2.14, p.s.

The district court pointed out that Mr. Stumpf, age twenty-three, was already on probation for two previous felony convictions. He had previously been convicted of arson in the bombing of an empty building in order to facilitate the theft of copper cable, and of burglary in which more than sixty weapons were stolen from a gun store. Mr. Stumpf had received lenient sentences on both of those convictions.* Also, the court felt that Mr. Stumpf was a threat to public safety because he had collected and sold anti-personnel weapons and was building highly volatile bombs in a residential area without regard to the safety of others. Thus, we hold that an upward departure was justified in this case.

Mr. Stumpf argues that the evidence did not support the district court's conclusions regarding (1) his potential to reoffend and (2) his belief that he was selling weapons to an illegal paramilitary group.

■■■ As to the first finding, the court pointed out evidence that Mr. Stumpf was given lenient treatment by previous courts and was offered help and support by several people anxious to help him rehabilitate himself, yet he persisted in criminal activity. Mr. Stumpf's testimony showed that he blamed others for his present problems. Furthermore, the evidence showed that Mr. Stumpf had unreasonable expectations of quick financial success and he unhesitatingly involved himself in criminal activity to achieve it.

■■■ As to the finding regarding Mr. Stumpf's belief that he was selling weapons to an illegal paramilitary group, the government presented transcripts of conversations between Mr. Stumpf and an undercover agent to whom Mr. Stumpf sold the pipe bombs and two guns. The undercover agent told Mr. Stumpf that he wanted the trip-wire bombs for "perimeter protection around ... our compound." Record, vol. 2, at 88. Mr. Stumpf argues that this reference alone was insufficient to put Mr. Stumpf on notice that he was supposedly dealing with a paramilitary group. However, the government also presented evidence that Mr. Stumpf had an interest in, and some level of sophistication about, paramilitary activities. In a search of Mr. Stumpf's home in connection with an earlier arrest, the authorities found a cache of weapons including an AK–47 assault rifle,

---

\* Mr. Stumpf received a sentence of five years' probation on the arson charge. On the burglary charge Mr. Stumpf was sentenced to six to eight years' imprisonment. However, sentence was suspended, and he received three years' probation on condition of one year in a Community Residential Treatment Center.

a Thompson submachine gun, a sniper scope with a homemade lighting device, a homemade rocket launcher, several cans of gunpowder, a pipe bomb, various copies of Soldier of Fortune magazine, and an outline describing a thirty-man army that was drawn up by Mr. Stumpf. Also, Mr. Stumpf attempted to convince the undercover agent that he could procure quantities of large and sophisticated weapons. In light of the above evidence, we cannot say that the trial court's findings of fact are clearly erroneous.

■ Having determined that an upward departure was justified in this case and that the trial court's findings of fact are adequately supported by the record, we must now turn to the question of whether the degree of upward departure was reasonable. Unfortunately, the present record will not allow us to make that determination.

In *United States v. Jackson,* 921 F.2d 985 (10th Cir.1990), this court set out in detail what the record must contain in order to allow us to conduct meaningful review of the reasonableness of upward departures. "We will not rationalize a district court's departure from the Guidelines—either the decision to depart or the degree of departure." *Id.* at 990. "Just as the district court must premise its departure on the Guidelines' deficiency in assigning a defendant a particular offense level, criminal history category, or both, the court also must explain a departure sentence in these terms." *Id.* Because the record in this case does not meet the requirements of *Jackson,* we remand to the district court for reconsideration of the degree of departure in light of *Jackson.*

In pronouncing sentence, the district court made reference to Guidelines which were not in effect at the time of Mr. Stumpf's offenses. Mr. Stumpf argues that the court actually applied the newer Guidelines in violation of the *ex post facto* clause of the Constitution. *See United States v. Swanger,* 919 F.2d 94 (8th Cir. 1990) (use of amended Guidelines not in effect at time of offense violates *ex post facto* clause). While one remark at the end of a lengthy discussion by the court suggests that the court was applying the newer Guidelines, we believe that the court's remarks, read as a whole, show the court understood that the former Guidelines governed, and that it was merely looking to the amended Guidelines for guidance in exercising its discretion to depart upward. *See United States v. Vega,* 860 F.2d 779, 800 (7th Cir.1988) (sentencing discretion may be guided in part by new Guidelines if court does not feel bound by them).

Because the record does not present sufficient explanations of the degree of departure, we REMAND with directions to reconsider the degree of departure in light of *Jackson.* If the record does not provide adequate grounds for the sentence imposed, we instruct the district court to vacate the sentence and resentence in light of *Jackson.*