**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Edward Scott FLINN, Defendant– Appellant.**

**No. 92–2045.**

United States Court of Appeals, Tenth Circuit.

March 4, 1993.

Stephen R. Kotz (Don J. Svet, U.S. Atty., with him on the brief), Asst. U.S. Atty., Albuquerque, NM, for plaintiff-appellee.

Roger A. Finzel, Asst. Federal Public Defender, Albuquerque, NM, for defendant-appellant.

Before MOORE, and BRORBY, Circuit Judges, and THEIS,* District Judge.

BRORBY, Circuit Judge.

Pursuant to 18 U.S.C. § 3742(a), Defendant–Appellant Edward Scott Flinn appeals a thirty-three month sentence received after entering into a plea agreement to an indictment charging him with fraudulent use of an unauthorized access device in violation of 18 U.S.C. § 1029(a)(2) and 18 U.S.C. § 1029(c)(1). Appellant contends the district court erred by upwardly departing from the United States Sentencing Com-

* The Honorable Frank G. Theis, Senior United States District Judge for the District of Kansas, sitting by designation.

mission *Guidelines Manual* (November 1, 1992) (Guidelines) in imposing his sentence.

## I. BACKGROUND

On February 24, 1991, Mr. Flinn, using an unauthorized Sprint long distance access code, called the Ramada Classic Hotel in Albuquerque from Honolulu, and convinced the hotel operator to provide him with an outside line by posing as a telephone repairman. From the outside line he dialed 911 and reported a hostage situation developing at the hotel. In a female voice, he identified himself as the hotel operator and described the crisis he witnessed over a television security monitor. He reported that nine men with large guns entered the hotel, killed one employee, and took all of the hotel guests hostage. The police dispatcher determined the call originated from the Ramada, yet was unable to contact the hotel operator to verify the crisis. The Albuquerque SWAT team was dispatched to the scene only to discover the report was a hoax.

On that same day, Mr. Flinn, posing as a police dispatcher, called the restaurant across the street from the hotel, and advised that all customers in the restaurant should lie down on the floor as a hostage situation was developing at the Ramada. He subsequently notified the local media that the police responded to a hostage situation at the hotel. These calls also were made using the unauthorized telephone access code.

The presentence report indicates that Mr. Flinn has a long and bizarre history of telephone abuse. In regard to the present situation, the report calculated a criminal history level of III and an adjusted offense level of 8, yielding a Guidelines range of six to twelve months. The report recommended an upward departure from the Guidelines, and the district court indeed found that a departure was warranted under the circumstances. The district court reasoned that an upward criminal history departure was necessary because the Defendant received lenient sentences for his other prior felony convictions and appears likely to commit other crimes. In further justifying the inadequacy of the initial criminal history category of III, the district court found that the "defendant has been involved in at least five (5) prior situations in which he misused a telephone to harass, intimidate and cause confusion."

The Guidelines policy statements of § 5K2.5 (Property Damage or Loss) and § 5K2.7 (Disruption of Governmental Function) provided the rationale for an upward departure in offense levels. The district court classified the $2,500 loss incurred by the Ramada as property damage or loss, and considered the unnecessary dispatch of the Albuquerque SWAT team a disruption of governmental function. The district court concluded that a criminal history of IV and an offense level of 14 more accurately reflected the magnitude of the Defendant's criminal activities. The higher categories resulted in a change from the initial six to twelve month range to an adjusted twenty-seven to thirty-three month range. Applying the adjusted Guidelines range, the district court sentenced Mr. Flinn to thirty-three months.

## II. DISCUSSION

Defendant appeals the district court's upward departure from the Sentencing Guidelines under 18 U.S.C. § 3742(a)(3). Section 3742(a)(3) provides a right of appeal when the sentence imposed is greater than the sentence specified in the applicable Guidelines range. The sentencing court can depart from the Guidelines range only if it "finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b). The decision and disposition of the appeal is governed by 18 U.S.C. § 3742(f).[1] The Su-

---

**1.** Section 3742(f) reads as follows:

If the court of appeals determines that the sentence—

(1) was imposed in violation of law or imposed as a result of an incorrect application of the sentencing guidelines, the court shall

preme Court recently interpreted § 3742(f), and adopted a two-step departure analysis in *Williams v. United States*, —— U.S. ——, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992). The first step is to determine if there was an incorrect application of the Guidelines under § 3742(f)(1). *Id.* at ——, 112 S.Ct. at 1120. If the departure is not the result of an error in interpreting the Guidelines, the second step is to determine if "the resulting sentence [is] an unreasonably high or low departure from the relevant guideline range." *Id.;* U.S.S.G. § 3742(f)(2). This analytical framework guides our review of the validity of upward departures.

 The Tenth Circuit approach established prior to *Williams* in *United States v. White*, 893 F.2d 276 (10th Cir.1990), is consistent with the *Williams* framework. *White* requires the appellate court to engage in a three-step review of upward departures: 1) de novo review of whether the circumstances cited by the district court warrant departure; 2) clearly erroneous review of the factual determinations underlying the decision to depart; and 3) reasonableness review of the degree of departure. *Id.* at 277–78. The *White* decision is analytically consistent with *Williams*, since it encapsulates both the steps articulated in *Williams* and mandated by § 3742(f). Therefore, we continue to engage in the three-step review articulated in *White*.

## A. Criminal History

The district court determined the Defendant's criminal conduct was significantly underrepresented by his criminal history score, and upwardly departed from crimi-

nal history level III to IV. The court departed from the Guidelines range because it determined 1) the Defendant committed prior criminal conduct as an adult which did not result in a conviction, 2) two prior and distinct felonies were consolidated for sentencing, and 3) the sentence Defendant received for prior felonies was lenient.

 According to the first prong of the *White* test, we review de novo whether these justifications legally support an upward departure. If the district court " 'finds that there exists an aggravating or mitigating circumstance of a kind, or to a degree not adequately taken into consideration by the Sentencing Commission in formulating the guidelines,' " then it may depart from the Guidelines. *United States v. Thornton*, 922 F.2d 1490, 1493 (10th Cir. 1991) (quoting 18 U.S.C. § 3553(b)). A record of prior similar conduct may provide a valid basis for an upward departure to a higher criminal history category. U.S.S.G. § 4A1.3(e); *United States v. Russell*, 905 F.2d 1450, 1454 (10th Cir.), *cert. denied*, 498 U.S. 904, 111 S.Ct. 267, 112 L.Ed.2d 224 (1990). Upward departure may also be appropriate when prior lenient sentences result in the misrepresentation of a defendant's actual criminal history. U.S.S.G. § 4A1.3, comment.; *United States v. Stumpf*, 938 F.2d 172, 174 (10th Cir.1991); *United States v. Fortenbury*, 917 F.2d 477, 478 (10th Cir.1990). Finally, upward departure may be warranted when prior convictions were grouped for sentencing and the criminal history underrepresents the seriousness of the prior conduct. *See* U.S.S.G. § 4A1.2, comment. (n. 3).[2] Indeed, the

remand the case for further sentencing proceedings with such instructions as the court considers appropriate;

(2) is outside the applicable guideline range and is unreasonable or was imposed for an offense for which there is no applicable sentencing guideline and is plainly unreasonable, it shall state specific reasons for its conclusions and—

(A) if it determines that the sentence is too high and the appeal has been filed under subsection (a), it shall set aside the sentence and remand the case for further sentencing proceedings with such instructions as the court considers appropriate;

(B) if it determines that the sentence is too low and the appeal has been filed under subsection (b), it shall set aside the sentence and remand the case for further sentencing proceedings with such instructions as the court considers appropriate;

(3) is not described in paragraph (1) or (2), it shall affirm the sentence.

2. U.S.S.G. § 4A1.2(a)(2) provides that "[p]rior sentences imposed in related cases are to be treated as one sentence" in calculating criminal history points. The commentary explains that prior sentences are considered related if they resulted from offenses that were consolidated for trial or sentencing. U.S.S.G. § 4A1.2, com-

Tenth Circuit has justified an upward departure in the criminal history category when serious offenses committed on independent occasions were consolidated for sentencing. *See White*, 893 F.2d at 279. Thus, the reasoning provided by the district court is legally sufficient to justify an upward departure in criminal history, and the district court did not incorrectly apply the Guidelines under U.S.C. § 3742(f)(1).

■ We review the factual basis for the criminal history departure for clear error. The district court's finding that "the defendant has been involved in at least five prior situations in which he misused a telephone to harass, intimidate and cause confusion" is factually supported by the findings in the presentence report. Likewise, the record reveals that two prior convictions were consolidated for sentencing.

The leniency of prior sentences is factually unclear from the record. The initial criminal history calculation [3] determined the Defendant received prior lenient sentences based on the assumption that the Defendant was incarcerated only forty-three days for his two prior felonies and his subsequent probation violation.[4] The presentence report, however, additionally states: "On December 2, 1988, the defendant was sentenced to four and one-half years incarceration, with three and one-half years suspended. He received a sentence of 364 days incarceration with three and one-half years probation." As an appellate court, it is difficult to review the application of the Guidelines when the findings of fact are unclear. Because there is evidence

supporting the finding that the Defendant's incarceration period was only forty-three days, such a finding is not clearly erroneous.

Finally, we address the third prong of the *White* test, whether the degree of departure by the district court was reasonable. We consider the following factors: "[T]he district court's proffered justifications, as well as such factors as: the seriousness of the offense, the need for just punishment, deterrence, protection of the public, correctional treatment, the sentencing pattern of the Guidelines, and the need to avoid unwarranted sentencing disparities." *White*, 893 F.2d at 278 (citing 18 U.S.C. § 3742(e)(3); 18 U.S.C. § 3553(a)). Although all of the above factors are relevant in making the reasonableness determination, the threshold requirement is the sentencing court's proffered justifications. *United States v. Roth*, 934 F.2d 248, 252 (10th Cir.1991). "We may consider the other indicia of reasonableness only if this requirement is met." *United States v. Jackson*, 921 F.2d 985, 990 (10th Cir.1990) (en banc).

■ The district court's proffered justifications must with specificity state reasons for the imposition of the particular sentence chosen when it is outside the range. In fact, 18 U.S.C. § 3553(c) specifically provides:

> The court, at the time of sentencing, shall state in open court the reasons for its imposition of the particular sentence, and, if the sentence—
>
> . . . .

---

ment. (n.3). The Sentencing Commission acknowledges, however, "[t]he court should be aware that there may be instances in which this definition is overly broad and will result in a criminal history score that underrepresents the seriousness of the defendant's criminal history." U.S.S.G. § 4A1.2, comment (n.3).

**3.** Because the probation officer determined the Defendant only *served a total of forty-three* days, Defendant was awarded only one criminal history point for his five-count charge for which he was sentenced on December 2, 1988, and his subsequent violation of his probation on July 20, 1990. Another point was assigned for a malicious telephone misdemeanor sentenced on

January 11, 1990. Finally, the probation officer awarded two points in accordance with U.S.S.G. § 4A1.1(d) since Defendant was on probation when he committed the instant offense. In total, Defendant was assigned four criminal history points resulting in a criminal history category of III.

**4.** Appellant argues the trial court was in error in concluding that Defendant had received a lenient sentence when he had actually received 364 days. Appellant's argument is a double-edged sword, because although such a sentence might not justify an upward departure based on leniency, a 364–day sentence would result in a higher criminal history point score.

(2) is not of the kind, or is outside the range, described in subsection (a)(4) [sentencing range established by the Guidelines], the specific reason for the imposition of a sentence different from that described.

By requiring the district court to substantiate its rationale behind the particular sentence imposed, we maintain twin goals of uniformity and proportionality in the application of the Guidelines. *See United States v. Gardner*, 905 F.2d 1432, 1436 (10th Cir.), *cert. denied*, 498 U.S. 875, 111 S.Ct. 202, 112 L.Ed.2d 163 (1990). More importantly, without the specific rationale, we are unable to review the reasonableness of a departure sentence. "We will not rationalize a district court's departure from the Guidelines—either the decision to depart or the degree of departure." *Jackson*, 921 F.2d at 990. This circuit has consistently followed *Jackson* and reiterated that the district court must specifically articulate reasons for the degree of departure so that the appellate court may properly review the reasonableness of the sentence. *See United States v. Kalady*, 941 F.2d 1090, 1100 (10th Cir.1991); *Stumpf*, 938 F.2d at 175; *United States v. St. Julian*, 922 F.2d 563, 569 (10th Cir.1990) (*St. Julian I*). Further, explanation of why a departure is made does not fulfill the separate requirement of stating the reasons for imposing the particular sentence. *Kalady*, 941 F.2d at 1100. The trial court must ensure the record contains sufficient information to enable a reviewing court to determine how and why the sentencing court reached the degree of departure imposed. *St. Julian I*, 922 F.2d at 570. Such information must include the court's explanation of intermediate steps between departure and selection of the final sentence, including reasons why the intermediate steps were taken. *Id.*

The Supreme Court in *Williams* states § 3742(f)(2) "directs a court of appeals to examine the factors to be considered in imposing a sentence under the Guidelines, as well as the *district court's stated reasons for the imposition of a particular sentence.*" *Williams*, — U.S. at —, 112 S.Ct. at 1121 (emphasis added). Therefore,

the Court, consistent with our approach, acknowledges that the reasonableness examination commences with the district court's proffered justification for the particular sentence selected. The *Williams* opinion focused on the consequences of the district court's improper application of the Guidelines in justifying a departure. The court decided that it was unnecessary to remand if the sentence was not a result of the application of improper grounds for departure, and the sentence was reasonable. "A sentence ... can be 'reasonable' even if some of the reasons given by the district court to justify the departure from the presumptive guideline range are invalid, provided that the remaining reasons are sufficient to justify the magnitude of departure." *Id.* Thus, *Williams* established the reasonableness analysis to be employed when the district court applied an improper ground for departure, but did not specifically address the situation when the district court fails to adequately articulate its reasons for the degree of departure.

Nevertheless, the Tenth Circuit has recently twice applied the *Williams* analysis in evaluating the reasonableness of the degree of departure. *United States v. St. Julian*, 966 F.2d 564 (10th Cir.), *cert. denied*, — U.S. —, 113 S.Ct. 348, 121 L.Ed.2d 263 (1992) (*St. Julian II*); *United States v. O'Dell*, 965 F.2d 937 (10th Cir. 1992). Both opinions emphasize the importance of the district court's articulation of its rationale justifying a particular sentence. In *St. Julian II*, we reiterated the holding in *St. Julian I* that the district court must "reference ... the guidelines in determining the appropriate degree of departure." *St. Julian II*, 966 F.2d at 567. In *O'Dell* we recognized the explanation for the degree of departure is an "absolute requirement". *O'Dell*, 965 F.2d at 939.

In both of these cases, the district court selected a degree of departure without providing a direct justification. In *St. Julian II*, the district court upon remand extrapolated from the Guidelines in an effort to conform with the instructions issued in *St. Julian I*. The extrapolation, however, resulted in a sentence that exceeded the stat-

utory maximum, and the district court disregarded the extrapolated range in sentencing the Defendant to seventy-two months, a sentence it deemed reasonable. Turning to *O'Dell*, we affirmed an upward departure of five months noting that there were two proper justifications for upward departure, despite the fact no rationalization supported the degree of departure. These two cases made clear that we will not remand if we are satisfied that the district court would impose the same reasonable sentences upon further articulation. *St. Julian II*, 966 F.2d at 569; *O'Dell*, 965 F.2d at 939.

Without any knowledge of the district court's initial reasoning, the appellate court generally cannot determine whether the district court would impose the same sentence upon remand. In *O'Dell* and *St. Julian II*, however, we were able to ascertain the district court's rationalization behind the sentences imposed. In *O'Dell*, the upward departure was only five months and the court determined that both justifications for departure were appropriate. Therefore, upon remand the court certainly would have been able to justify such an incremental departure. In *St. Julian II*, the district court attempted to extrapolate the upward departure referencing the Guidelines, but the end result was nonsensical. Consequently, the district court selected a sentence which it termed reasonable. Because the district court had already articulated its thought process, a further remand would have yielded the same result.

■ The situations in these cases are rare. Outside such extremely narrow circumstances in which the appellate court can unmistakably determine the reasonableness of the district court's selection of a particular sentence, the district court must provide an adequate explanation for the particular sentence imposed or the appellate court is obligated to remand. We have previously held the appellate court should not "speculate as to reasoning that might have been employed by the sentencing court to arrive at a particular sentence". *Gardner*, 905 F.2d at 1436. Con-

sequently, we will generally not commence a reasonableness analysis unless the district court has referenced the Guidelines in its rationale for selecting a degree of departure.

In the present case, the district court's criminal history and offense level departures resulted in an increase from a sentencing range of six to twelve months to a sentence of thirty-three months. The court only provided the following explanation in departing from criminal history level III to level IV: "Based on these findings [aforementioned reasons supporting upward departure], the defendant's criminal history category would be more adequately represented and more similar to those individuals having a criminal history category of IV." In essence, the court never specified its rationale in selecting criminal history level IV, but instead relied on its initial reasons justifying departure. The rationale in support of an upward departure does not convert into a justification for the specific degree of departure selected. *See Kalady*, 941 F.2d at 1100. Unlike *O'Dell* and *St. Julian*, we cannot follow the district court's thought process in the imposition of this sentence, and therefore we cannot determine whether such a departure is reasonable, nor can we conclude with certainty the district court would impose the same sentence upon remand.

Because a one-level increase is the minimum departure, the government argues that once an upward departure is justified, such a departure is necessarily reasonable with or without an explanation. This is an overly simplistic approach which does not acknowledge the mechanics of criminal history category assignments. Criminal history categories are determined by the amount of criminal history points assigned to the defendant. If a defendant has 4–6 criminal history points he or she falls within criminal history category III. U.S.S.G. Ch. V, Pt.A–Sentencing Table. Criminal history category IV is comprised of defendants with 7–9 points. *Id.* The probation officer determined Mr. Flinn had 4 criminal history points, *see supra* n. 2, and the court made no indication that it felt the determination was in error. If the court decided

an appropriate methodology was to assign criminal history points for past criminal acts, in order to upwardly depart to criminal history category IV, the court would have to justify a three-*point* departure to 7 criminal history points. Characterizing the one category departure as a minimum departure is inaccurate, as the court could have assigned the Defendant additional points without raising the criminal history category.

■ In upwardly departing, assigning criminal history points for past criminal acts is one methodology consistent with the Guidelines goals of uniformity and proportionality. Courts may use other analogies to or extrapolations from the Guidelines, as they are not limited to strict point analogies. In fact, the court may use any "reasonable methodology hitched to the Sentencing Guidelines to justify the reasonableness of the departure". *United States v. Harris,* 907 F.2d 121, 124 (10th Cir.1990). We do not require the court to invent a mathematical formula which should be used in all instances. *Jackson,* 921 F.2d at 991 (citing *United States v. Dean,* 908 F.2d 1491, 1497 (10th Cir.1990)). We reiterate that any method of reference chosen must be explicit.

■ Once the sentencing court has enunciated the rationale behind its degree of departure, the appellate court determines whether the departure is reasonable. In making this determination, the appellate court should afford the trial court some discretion, as "we should not lightly overturn determinations of the appropriate degree of departure". *White,* 893 F.2d at 279. Nevertheless, an appellate court is unable to give deference to a sentencing court's rationale when it is not provided.

Because we never received the district court's proffered justifications for the selection of criminal history category IV, and it would be improper to speculate as to the rationale, we are precluded from evaluating the reasonableness of the sentence imposed. Therefore, we must remand the degree of departure selected in criminal history so that the district court may provide a more precise methodology for its selection of criminal history category IV.

### B. Offense Level Departure

The district court upwardly departed from the offense level 8 calculated by the probation officer,[5] and sentenced Mr. Flinn at level 14. We will engage in the same three-part *White* analysis in relation to the offense level departure.

■ We review de novo whether the circumstances cited by the district court justify a departure from the Guidelines. The district court justified the upward offense level departure relying on two specific grounds; U.S.S.G. § 5K2.5 (Property Damage or Loss), and U.S.S.G. § 5K2.7 (Disruption of a Government Function). In order to upwardly depart from the Sentencing Guidelines, the Court must find "there exists an aggravating . . . circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0. The sentencing court should treat each guideline as carrying out a set of typical cases embodying the conduct that each guideline describes. *White,* 893 F.2d at 278. The district court correctly determined the Guidelines did not account for the aggravating circumstances in this case, as the drafters of the Guidelines did not envision the perpetration of a hostage hoax when they created the offense characteristics for fraud and deceit under U.S.S.G. § 2F1.1.

Once it is clear the Guidelines do not adequately address the Defendant's criminal conduct, we still must review whether the district court's grounds for departure, U.S.S.G. § 5K2.5 (Property Damage or Loss), and U.S.S.G. § 5K2.7 (Disruption of

---

**5.** The probation officer made the following calculation: Defendant was assigned 6 points as the base offense level for fraud and deceit under § 2F1.1(a). Defendant received an additional two points each for more than minimal planning § 2F1.1(b)(2) and impersonation of a police dispatcher § 2F1.1(b)(3)(A) bringing the total to ten. Two points were subtracted for acceptance of responsibility reducing Mr. Flinn's offense level to 8.

a Government Function), are appropriate. Section 5K2.5 is a proper rationale for departure because the Defendant inflicted over $2,500 worth of damage to the hotel. The policy statement allows for an increase, "[i]f the offense caused property damage or loss not taken into account within the guidelines." U.S.S.G. § 5K2.5. Since Mr. Flinn was convicted of committing a fraud against Sprint, the offense level was calculated using the $411.15 Sprint was defrauded. Thus, the $2,500 consequential damages to the hotel were not taken into account in computing the offense level and therefore justify an upward departure.

Similarly, the Defendant's conduct resulted in the dispatching of the Albuquerque SWAT unit, which would come within the purview of U.S.S.G. § 5K2.7 (Disruption of Governmental Function). The policy statement warns, however, that a departure from the Guidelines is not justified when the "interference with a governmental function is inherent in the offense." U.S.S.G. § 5K2.7; *see United States v. Goodrich*, 919 F.2d 1365, 1369 (9th Cir. 1990). There is nothing inherent in the offense of fraud that would encompass the consideration of a disruption of a government function. Consequently, the district court's reliance on § 5K2.7 for upward departure is proper.

Addressing the second prong of the *White* analysis, there is no challenge to the district court's factual conclusions as to the property damage incurred by the hotel, or the dispatch of the SWAT team. Thus, the district court's conclusions are not clearly erroneous.

We turn once again to the reasonableness of the degree of departure selected by the district court. The government concedes the district court did not adequately explain its rationale for selecting the offense level of 14. The district court may not conclude that an upward departure is justified and then arbitrarily pick an offense level. Rather,

the district court should articulate the objective criteria used as a basis for determining the actual sentence imposed.

In many instances, this will consist of an extension of or extrapolation from other guideline levels or principles, or use of an analogy to other closely related conduct or circumstances that are addressed by the guidelines.

*Gardner*, 905 F.2d at 1438. No such analogy or extrapolation was employed by the district court in this case.

 We therefore remand to the district court for an explanation of the offense level departure. We reiterate the instructions in *Jackson:* "The universe of potential crimes may seem infinite, but all crimes are composed of different combinations of a limited number of basic offense characteristics. A sentencing court should be able to find some treatment of most offense characteristics in the Guidelines." *Jackson*, 921 F.2d at 991. Essentially, once the court decides the sentence level under the charged offense does not adequately represent the crime committed, we require it to suggest an offense level derived from a Guidelines recognized offense or adjustment which more accurately describes the element which made the defendant's crime atypical.

Appellant asserts the district court's offense level departure based on the significant disruption of a governmental function is unreasonable by comparison to other cases. We do not evaluate the reasonableness of the departure in relation to other cases which use the same rationale, but instead determine if the analogy to, or extrapolation from, the Guidelines is reasonable considering the facts of this case. Thus, we cannot determine in the abstract whether the degree of departure attributed to the disruption of governmental function is unreasonable.

Finally, Appellant contends the district court erred in sentencing him at the upper end of the Guidelines range. It is clear from 18 U.S.C. § 3742(a) that we do not review the sentencing court's rationale for the imposition of a sentence within the appropriate Guidelines range. *United States v. Garcia*, 919 F.2d 1478, 1481 (10th Cir.1990). Therefore, any challenges by Appellant questioning the methodology be-

hind the imposition of a sentence at the upper end of the Guidelines range must necessarily fail if the range itself is appropriate.

We REMAND to the district court for a detailed rationale in support of the criminal history category and offense level selected.