**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 30 2004**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellant,

v.

MICHAEL R. NUNEMACHER,

     Defendant - Appellee.

No. 02-3380

**APPEAL FROM THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**
**(D.C. No. 01-CR-10123-01-JTM)**

Richard A. Friedman, Appellate Section, Criminal Division, United States Department of Justice, Washington, D.C. (Eric F. Melgren, United States Attorney for the District of Kansas; Nancy Landis Caplinger and Alan G. Metzger, Assistant United States Attorneys for the District of Kansas, Wichita, Kansas, with him on the briefs), for Plaintiff-Appellant.

Stephen M. Joseph of Joseph & Hollander, P.A., Wichita, Kansas, for Defendant-Appellee.

Before **SEYMOUR, McKAY,** and **O'BRIEN,** Circuit Judges.

**McKAY**, Circuit Judge.

This is an appeal by the Government of the district court's decision to depart downward from the applicable Guideline sentencing range in a child pornography case. At the time of the offense, in April 2001, the Defendant was a sophomore at college living in the dormitory. The record reflects that, for a period of a few weeks, he possessed and distributed child pornography on his computer. During the time that Defendant was collecting and distributing child pornography, an FBI agent accessed his site and downloaded child pornography. Defendant did not know he was being investigated by the FBI at the time. After a few weeks, Defendant removed the software and destroyed all of the pornography files on his computer with the exception of a floppy disk that he destroyed a short time later. Five months later, he first learned of the FBI's investigation. Defendant admitted his guilt and cooperated with the FBI agents. After the FBI's initial contact with Defendant, he sought professional help and began sex offender treatment.

On October 30, 2001, Defendant was indicted with distribution and possession of child pornography. He entered into a written plea agreement in which the Government agreed to drop the distribution charge and to recommend that Defendant receive the maximum acceptance of responsibility reduction. The probation office calculated Defendant's sentencing range as 27-33 months' imprisonment based on a criminal history of I and an offense level of 18. The

Presentence Report recommended no grounds for departure because Defendant had already received a significant benefit from not having the distribution charge counted in the calculation (which could have been done) and by receiving the acceptance of responsibility credit.

At the sentencing hearing on September 6, 2002, the district court departed downward and imposed a sentence of five years probation based on the limited duration of the offense, voluntary termination of illegal activities, diminished capacity, and post-offense rehabilitation. On appeal, the Government argues that the district court erred in finding valid grounds for departing downward in this case. Alternatively, the Government argues that even if there were valid grounds for departure, the district court's extent of departure was unreasonable.

The recent enactment of the Prosecutorial Remedies and Tools Against the Exploitation of Children Today Act of 2003 ("PROTECT Act"), Pub. L. No. 108-21, 117 Stat. 650 (April 30, 2003), changed the standard of review applicable to sentencing departures. We continue to accept the district court's findings of fact unless they are clearly erroneous, and we "give due deference to the district court's application of the guidelines to the facts." 18 U.S.C. § 3742(e). However, "[w]here the district court departs from the sentencing guidelines, [we now] review de novo the district court's determinations under 18 U.S.C. § 3742(e)(3)(A) and (B)." United States v. Jones, 332 F.3d 1294, 1299 (10th Cir.

2003). We have previously held that the new standard of review in 18 U.S.C. §

3742(e)(3)(A) and (B) applies to defendants who were sentenced prior to the

enactment of the PROTECT Act. Id.

In Jones, we also detailed the framework to be used when reviewing a

district court's sentencing departure including relevant cites to the new

PROTECT Act. Since the PROTECT Act did not substantially change the

substantive considerations for crimes other than child crimes or sexual offenses,

see generally United States v. Vanleer, 270 F. Supp. 2d 1318, 1322-23 (D. Utah

2003), the basic analytical framework remained essentially the same as before

even though the considerations are now codified. See Jones, 332 F.3d at 1299

("applicable analytical framework . . . remains generally consistent with the four-

part test set forth in [United States v. Collins, 122 F.3d 1297 (10th Cir. 1997)]").

Unlike in Jones, the Defendant in our case *is* convicted of a child crime or

sexual offense[1]. For defendants convicted of child crimes or sexual offenses after

the PROTECT Act went into effect on April 30, 2003, 18 U.S.C. § 3553(b)(2)[2]

---

[1]Defendant pleaded guilty to 18 U.S.C. § 2252(a)(4)(B), possession of child
pornography.

[2]18 U.S.C. § 3553(b)(2) provides:

(A) Sentencing.--In sentencing a defendant convicted of an offense
under section 1201 involving a minor victim, an offense under
section 1591, or an offense under chapter 71, 109A, 110, or 117, the
court shall impose a sentence of the kind, and within the range,

(continued...)

[2](...continued)
referred to in subsection (a)(4) unless--
(i) the court finds that there exists an aggravating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence greater than that described;
(ii) the court finds that there exists a mitigating circumstance of a kind or to a degree, that--
(I) has been affirmatively and specifically identified as a permissible ground of downward departure in the sentencing guidelines or policy statements issued under section 994(a) of title 28, taking account of any amendments to such sentencing guidelines or policy statements by Congress;
(II) has not been taken into consideration by the Sentencing Commission in formulating the guidelines; and
(III) should result in a sentence different from that described; or
(iii) the court finds, on motion of the Government, that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense and that this assistance established a mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence lower than that described.

In determining whether a circumstance was adequately taken into consideration, the court shall consider only the sentencing guidelines, policy statements, and official commentary of the Sentencing Commission, together with any amendments thereto by act of Congress. In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2). In the absence of an applicable sentencing guideline in the case of an offense other than a petty offense, the court shall also have due regard for the relationship of the sentence imposed to sentences prescribed by guidelines applicable to similar offenses and offenders, and to the applicable policy statements of the Sentencing Commission, together with any amendments to such guidelines or policy statements by act of

(continued...)

provides the new approach to determine whether a departure is "authorized."

Since the PROTECT Act went into effect after sentencing in our case, we cannot

apply 18 U.S.C. § 3553(b)(2). "[W]hen a new statute is passed, the general rule

is that courts will not apply the statute in ways that would create new legal

consequences for events completed before the statute was enacted." Daniels v.

United States, 254 F.3d 1180, 1187 (10th Cir. 2001); see also Landgraf v. USI

Film Prod., Inc., 511 U.S. 244, 265 (1994) ("presumption against retroactive

legislation"); United States v. Mallon, 345 F.3d 943, 946 (7th Cir. 2003) (noting

that "[n]ew laws presumptively operate prospectively and do not alter the legal

consequences of completed acts" in context of non-procedural aspects of the

PROTECT Act); U.S.S.G. § 1B1.11(a) ("[t]he court shall use the Guidelines

Manual in effect on the date that the defendant is sentenced."). However, as

noted infra, in Jones, we have decided that the new standard of appellate review

does apply.[3]

---

[2](...continued)
Congress.

Id.

[3]As noted by the Seventh Circuit in Mallon,

appellate review of [the] sentence lay in the future as of April 30,
2003, so we must apply the new standard of review. . . . [Applying
the new standard of review] does not change the statutory penalties
for [the] crime, affect the calculation of the Guidelines range, or alter

(continued...)

Because we cannot retroactively apply 18 U.S.C. § 3553(b)(2) in this case, the pre-PROTECT Act framework, now codified in the PROTECT Act for crimes other than child crimes or sexual offenses and detailed in <u>Jones,</u> is applicable here even though Defendant is convicted of a child crime or sexual offense.[4]  In <u>Jones,</u> we outlined the four-part framework as follows:

> First, we must ascertain whether the district court set forth, in a written order of judgment, its specific reasons for departure.  18 U.S.C. § 3742(e)(3)(A); 18 U.S.C. § 3553(c)(2).  Second, we must consider whether the factors the district court relied upon "advance the objectives set forth in section 3553(a)(2)[5]," 18 U.S.C. §

---

[3](...continued)
the circumstances under which departures are permitted.  It changes *who* within the federal judiciary makes a particular decision, but not the legal standards for that decision.

345 F.3d at 945.

[4]For defendants sentenced after the PROTECT Act's enactment, 18 U.S.C. § 3553(b)(2) will change the analysis.  The effect of § 3553(b)(2) is beyond the scope of the instant appeal.

[5]Section 3553(a)(2) provides:

The court, in determining the particular sentence to be imposed, shall consider--
. . . .
(2) the need for the sentence imposed--
(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
(B) to afford adequate deterrence to criminal conduct;
(C) to protect the public from further crimes of the defendant; and
(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most

(continued...)

3742(e)(3)(B)(i), and ensure that the district court's reliance on those factors did not violate any specific prohibition in the Guidelines, <u>Koon v. United States</u>, 518 U.S. 81, 106, 116 S. Ct. 2035, 135 L. Ed.2d 392 (1996). Our review under this second prong of the analysis is de novo. 18 U.S.C. § 3742(e);[6] <u>Collins</u>, 122 F.3d at 1302-03. Third, we must consider whether the factors the district court relied upon were "authorized under section 3553(b)" [] and "justified by the facts of the case." 18 U.S.C. § 3742(e)(3)(B)(ii)-(iii). To determine whether the factors are "authorized," we look to 18 U.S.C. § 3553(b)(1), which provides that a district court may depart if "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." This third step in the analysis is commonly called the "heartland" determination. <u>See Collins</u>, 122 F.3d at 1303 (reviewing court must determine "whether the departure factors relied upon by the district court remove the defendant from the applicable Guideline heartland [sufficient to] warrant[ ] a departure"). We review de novo this "application of the guidelines

---

[5](...continued)
effective manner.

18 U.S.C. § 3553(a)(2).

[6]Section 3742(e) provides in relevant part:

The court of appeals shall give due regard to the opportunity of the district court to judge the credibility of the witnesses, and shall accept the findings of fact of the district court unless they are clearly erroneous and, except with respect to determinations made under subsection(3)(A) and (3)(B), shall give due deference to the district court's application of the guidelines to the facts. With respect to determinations under subsection (3)(A) and (3)(B), the court of appeals shall review de novo the district court's application of the guidelines to the facts.

18 U.S.C. § 3742(e).

to the facts" under 18 U.S.C. § 3742(e)(3)(B).[7]  See 18 U.S.C. § 3742(e).  Finally, we must ask whether the district court's sentence "departs to an unreasonable degree from the applicable guidelines range."  18 U.S.C. § 3742(e)(3)(C); accord Collins, 122 F.3d at 1303 (reviewing court must determine "whether the degree of departure is reasonable").  In reviewing the degree of departure, we give due deference to the district court, 18 U.S.C. § 3742(e), and will not reverse absent an abuse of discretion.  United States v. Goldberg, 295 F.3d 1133, 1138, 1141 (10th Cir.2002).

Jones, 332 F.3d at 1300 (footnotes in original).

Pursuant to Jones, the first determination on appellate review is whether the district court stated its reasons for a downward departure with specificity.  The district court in our case had no warning of the future requirements when it entered its judgment and set forth its reasons orally at the sentencing hearing.  "Whether this statement meets the specificity requirement of § 3553(c) [for the purposes of this appeal] is a matter we need not decide in this instance, because we conclude defendant must be resentenced in any event."[8]  Id.  However, we

---

[7]To be clear: although we review de novo whether a particular departure factor is "authorized under section 3553(b)" and "justified by the facts of the case," we review the district court's underlying findings of fact for clear error.  See 18 U.S.C. § 3742(e).

[8]The Sixth and Eighth circuits, the only two to have specifically addressed this question, have stated:

The PROTECT Act now requires the sentencing court to provide in the written order of judgment the "specific reason" for departing from the guidelines.  Pub. L. No. 108-21 § 401(c)(1), 117 Stat. 650 (2003) (amending 18 U.S.C. § 3553(c)).  The defendant in this case was sentenced before the PROTECT ACT was enacted, however, and

(continued...)

caution the district court to be mindful of this requirement at resentencing.

Our second inquiry is whether the district court relied on permissible factors in its decision to depart downward. Permissible factors advance the objectives set forth in § 3553(a)(2) and may not violate any specific prohibition in the Guidelines. Jones, 332 F.3d at 1299. The district court relied on the following factors in its decision to depart downward: (1) "atypical conduct" including the limited duration of the offense, voluntary termination from the conduct prior to law enforcement contact, and cooperation with law enforcement agents; (2) rehabilitation efforts; and (3) diminished capacity. Aplt. App. at 96-98.

The Government argues that the above factors were not appropriate factors based on the record in this case. The Government does not appear to be arguing that these factors are never valid grounds for departure. Additionally, the Government admitted at sentencing that "the United States does agree that all

---

[8](...continued)
thus no such "specific reason" was outlined in the order of judgment. The district court's specific reasons were, however, outlined in the other cited materials and are sufficient to allow review of the decision to depart. See United States v. Aguilar-Lopez, 329 F.3d 960, 963 (8th Cir. 2003) (noting that "the district court had no obligation to provide written reasons at the time it sentenced [the defendant], but the written statement it furnished [was] sufficient . . . to allow review of the decision to depart").

United States v. Camejo, 333 F.3d 669, 676 n.2 (6th Cir. 2003).

three of those are, in fact, permissible factors for departure[.]" Id. at 106.

Therefore, we must turn to the third prong, whether the district court erred in concluding that these factors were permissible departure grounds in this case.

Defendant asserts that his conduct fell outside the heartland of defendants convicted of possession of child pornography. In the "heartland" determination, we must determine whether the factors relied upon by the district court were authorized under § 3553(b) and also justified by the facts of the case. Title 18 U.S.C. § 3553(b)(1) provides that a district court may depart if "there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." Id. "In the absence of an applicable sentencing guideline, the court shall impose an appropriate sentence, having due regard for the purposes set forth in subsection (a)(2)." Id. Section (a)(2) provides that the court, in imposing a sentence, shall consider

> the need for the sentence imposed--
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner[.]

Id. We review *de novo* this "application of the guidelines to the facts" under 18 U.S.C. § 3742(e)(3)(B). Jones, 332 F.3d at 1300; see 18 U.S.C. § 3742(e).

-11-

First, the atypical conduct relied on by the district court takes into account several different considerations including the limited duration of the offense, voluntary termination from the conduct prior to law enforcement contact, and cooperation with law enforcement. As the Government points out, voluntary termination of illegal activity and cooperation with law enforcement are already taken into account by an acceptance of responsibility adjustment (which Defendant received) under U.S.S.G. § 3E1.1, Comm., Appl. N. 1(a), (d), (e), and (g), and "thus may not serve as a basis for departure unless [they] are present to an exceptional degree." United States v. Benally, 215 F.3d 1068, 1075 (10th Cir. 2000); see also Jones, 158 F.3d at 502-03. "The inquiry required to resolve whether [Defendant's voluntary termination and cooperation] were exceptional . . . is necessarily a factual one." Benally, 215 F.3d at 1075.

In our case, the illegal activity began and ceased in April 2001. Defendant voluntarily ceased the illegal activity before he had any knowledge of the FBI investigation. More than five months before Defendant first learned of the FBI investigation, he removed the software and destroyed all the pornography files on his computer with the exception of a floppy disk which he destroyed a little later. In October 2001, the FBI contacted Defendant. Defendant cooperated fully with the agents, admitted his offense, and surrendered his computer equipment. In all the other cases surveyed by Defendant's attorney and presented to the district

-12-

court, the offender was still trafficking in illegal child pornography at the time of arrest. The district judge specifically noted that, in all the reported cases he reviewed, "it's a nonexistent occasion where the arrest did not take place while the person was still trafficking in child pornography." Aplt. App. at 99.

The district court also considered that Defendant's criminal activity took place over a short duration. The record reflects that Defendant possessed and distributed child pornography for a few weeks. In all the other cases surveyed by the Defendant and presented to the district court, the offenders had long histories of involvement in pornography and/or child pornography. The district judge stated that

> from the cases I have reviewed, the typical offender and, in fact, the offenders I have seen here in child pornography cases over the past six and a half plus years have all not only been trafficking at the time of their arrest, but also have long histories - some of them extending over a period of years - of involvement in pornography or child pornography.

Id.

We note that "limited duration" is specifically taken into account in U.S.S.G. § 5K2.20, Aberrant Behavior. Section 5K2.20 provides that "[a] sentence below the applicable guideline range may be warranted in an extraordinary case if the defendant's criminal conduct constituted aberrant behavior." Id.

"Aberrant behavior" means a single criminal occurrence or single

-13-

criminal transaction that (A) was committed without significant planning; (B) was of limited duration; and (C) represents a marked deviation by the defendant from an otherwise law-abiding life.

Id., Appl. N. 1. The parties agree that Defendant's conduct does not fall into the literal definition of aberrant behavior. However, pursuant to United States v. Neal, 249 F.3d 1251, 1255-56 (10th Cir. 2001), limited duration may be considered an "analogous" factor which provides a "legally permissible bas[is] for sentencing departures."[9] Id. at 1258. Coupled with voluntary termination and cooperation with law enforcement as "atypical conduct," limited duration strengthens the district court's conclusion that Defendant's conduct was atypical. We therefore hold that, on the facts of this case, Defendant's "atypical conduct," including one or all of the three components discussed above, could be considered sufficiently exceptional to warrant a departure. As such, on remand the district court may rely on one or more of the components of atypical conduct in determining the degree of departure.

The district court's second basis for departure was that Defendant voluntarily sought treatment shortly after he was contacted by the FBI and before he was indicted. "[P]ost-offense rehabilitation is accounted for in the context of the acceptance of responsibility adjustment under U.S.S.G. § 3E1.1, comment.

---

[9]We note that post-PROTECT Act, U.S.S.G. § 5K2.20, specifically disallows downward departures for "Aberrant Behavior" in child crimes or sexual offenses.

(n.1(g)), and thus may not serve as a basis for departure unless it is present to an exceptional degree." Benally, 215 F.3d at 1075.

A review of the psychological report and evaluation submitted by Mr. Epp, Licensed Specialist Clinical Social Worker, appears to be the district court's sole basis for concluding that Defendant "is continuing to make terrific efforts at rehabilitation" to justify a downward departure based on post-offense rehabilitation. Aplt. App. at 98. The report states that a week after the FBI contacted Defendant regarding his offense in October 2001 Defendant voluntarily entered into a treatment program at Prairie View. Defendant received weekly individual treatment until June 2002 and participated in a specialized sex offender treatment group as well. Due to issues with several of his therapists, individual therapy was temporarily suspended until a date unclear from a review of the report. Defendant continued in group therapy and performed "better than expected" in that group setting. Id. at 71. The report concluded that "[d]ue to [Defendant's] lack of psychological insight, his difficulty with disclosure to others, trust issues, and lack of motivation for treatment [his] prognosis currently appears to be somewhat guarded." Id. at 73.

Our review of the report indicates that Defendant has made some effort at rehabilitation – most notably voluntarily entering a treatment program and continuing to participate in the program. However, there is nothing in the report

or anywhere else in the record that indicates that Defendant's rehabilitation efforts have been extraordinary. His "lack of motivation for treatment" and guarded prognosis are at odds with the district court's determination that rehabilitative efforts have been "terrific." Departing downward based on this factor was therefore impermissible.

The district court's third consideration was diminished capacity. Diminished capacity is listed in the Guidelines as an encouraged factor for departure. See U.S.S.G. §§ 5K2.0, 5K2.13; Neal, 249 F.3d at 1255-56, n.5. Section 5K2.13 provides that "[a] sentence below the applicable guideline range may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity." U.S.S.G. § 5K2.13. A "significantly reduced mental capacity" means that the defendant "has a significantly impaired ability to (A) understand the wrongfulness of the behavior compromising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." Id., Comm., Appl. N. 1.

We found no support in the record for the district court's determination that diminished capacity formed another basis for a downward departure. The psychological report and evaluation submitted by Mr. Epp, which was relied on by the district court, does not reflect that Defendant "has a significantly impaired ability to [(1)] understand the wrongfulness of [his behavior or (2)] control

behavior that the defendant knows is wrongful." Id. The psychological test results did "not indicate the presence of a major affective disorder, anxiety disorder, psychosis, or substance abuse disorder." Aplt. App. at 67. "[T]he test results do indicate the presence of some enduring and pervasive personality traits that underlie [Defendant's] personal and interpersonal difficulties." Id. The report notes that "[t]hese personality traits have significantly impaired" Defendant's perception of himself and others, the appropriateness of his emotional responses, and Defendant's social and academic functioning. Id. However, the discussion in the report of Defendant's "personality features" mentions nothing about either inability to understand the wrongfulness of conduct or significantly compromised impulse control. The only reference in the report to impulse control is the social worker's statement that "[Defendant] has reported that . . . [he] was unable to control his compulsive viewing of child pornography . . . ." Id. at 71. However, Defendant's statement to his social worker has no further support from the evaluation and report. Defendant has admitted that his conduct was illegal. Additionally, Defendant was able to stop his use of child pornography voluntarily. The fact that Defendant voluntarily stopped the behavior, absent any other record support, belies the belief that Defendant could not control his conduct. In any event, U.S.S.G. § 5K2.13 requires significant impairment specific to the offense itself which is not present in this case. Id.,

-17-

Comm., Appl. N. 1. The district court's downward departure based on diminished capacity was impermissible.

Since we hold that the district court was permitted to depart downward in the instant case based only on the considerations labeled as "atypical conduct," our final inquiry is whether the sentence "departs to an unreasonable degree from the applicable guidelines range." 18 U.S.C. § 3742(e)(3)(C); Collins, 122 F.3d at 1303 (a reviewing court must determine "whether the degree of departure is reasonable") (overruled on other grounds). "In reviewing the degree of departure, we give due deference to the district court, 18 U.S.C. § 3742(e), and will not reverse absent an abuse of discretion." Jones, 332 F.3d at 1300 (citing United States v. Goldberg, 295 F.3d 1133, 1138, 1141 (10th Cir. 2002)). In our determination of reasonableness,

> we consider the district court's reasons for imposing the particular sentence together with factors such as: the seriousness of the offense, the need for just punishment, deterrence, protection of the public, correctional treatment, the sentencing pattern of the Guidelines, the policy statements contained in the Guidelines, and the need to avoid unwarranted sentencing disparities. United States v. Collins, 122 F.3d 1297, 1308-09 (10th Cir. 1997) (quotation marks and citations omitted). "The district court may use any reasonable methodology hitched to the Sentencing Guidelines to justify the reasonableness of [a] departure, which includes using extrapolation from or analogy to the Guidelines." Id. at 1309 (quotation marks and citations omitted). "[T]he task of . . . the sentencing court[ ] is to attempt to predict what the Sentencing Commission would have established as a guideline range had it adequately considered the circumstances justifying the departure." United States v. Kalady, 941 F.2d 1090, 1101 (10th Cir.1991).

-18-

United States v. Hurlich, 348 F.3d 1219, 1221-22 (10th Cir. 2003).

"In departing from the applicable guideline range, a district court must specifically articulate reasons for the *degree* of departure." Collins, 122 F.3d at 1309 (emphasis added and internal citations omitted). We were unable to discern from the sentencing transcript why an eight-level departure resulting in probation instead of the minimum Guideline sentence of 27 months' imprisonment was warranted in this case. See Aplt. App. at 98-100. The district court simply reiterated that it believed there were grounds supporting a departure; the court did not state why it chose the extent of departure. See id.

Most importantly, the district court abused its discretion in failing to use any "reasonable methodology hitched to the Sentencing Guidelines" as required by Goldberg. The district court's "explanation of why a departure is made does not fulfill the separate requirement of stating the reasons for imposing a particular sentence." United States v. Flinn, 987 F.2d 1497, 1502 (10th Cir. 1993). "[W]ithout the specific rationale[] [of the district court,] we are unable to review the reasonableness of a departure sentence." Id. The general statistics relied on by the district court in this case do not provide a case-specific reason for departing eight levels. District courts are supposed to give some rationale *tied to the Guidelines* for the degree of departure *in the specific case*. However, in this case, the district court failed to articulate any rationale for selecting the extent of

-19-

downward departure. The district court further failed to tie the eight-level departure to the Guidelines in any way.

"[W]e will generally not commence a reasonableness analysis unless the district court has referenced the Guidelines in its rationale for selecting a degree of departure" except in "extremely narrow circumstances in which the appellate court can unmistakably determine the reasonableness of the district court's selection of a particular sentence." Id. at 1503-04. Because this case must be remanded for resentencing, it is important to note that there were facts that could have taken Defendant's conduct outside the heartland of United States Sentencing Guideline § 2G2.4 (Possession of Materials Depicting a Minor Engaged in Sexually Explicit Conduct) sufficient to warrant an *upward* departure. The degree of departure must be "reasonable" under all the circumstances, including consideration of "the seriousness of the offense." Collins, 122 F.3d at 1308; 18 U.S.C. § 3553(a); 18 U.S.C. § 3742(e)(3)(A). The district court did not specifically address these considerations in its decision to depart downward eight levels.

First, Defendant engaged in distribution, a more serious offense than the possession charge to which he pleaded guilty. Given the fact that Defendant's offense conduct was more serious than what would be covered by the sentencing range of 27-33 months' imprisonment, it was unreasonable for the district court,

without explanation, to have granted Defendant an eight-level downward departure as if he were similarly situated to a defendant who had merely possessed child pornography but had not distributed it. Second, the recommendation stemming from the plea bargain and Presentence Report took into account some of the mitigating circumstances relied on by the district court to depart downward. In a sense, Defendant received double consideration for the factors relied on by the district court at sentencing. The district court gave no explanation for this double consideration.

While we agree that the district court relied on some permissible considerations which may have removed Defendant from the heartland of U.S.S.G. § 2G2.4, the court failed to provide any acceptable rationale that the departure it chose was reasonable. Our independent review of the record demonstrates that, in any event, an eight-level departure was per se unreasonable in this case.

**REVERSED** and **REMANDED**.